# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-3296

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Eastern |
| | * | District of Arkansas. |
| Nasser Ahmed Ameri, also known as | * | |
| Nasir Almeri, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: April 12, 2005
Filed: June 15, 2005

_____

Before MURPHY, BRIGHT, and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

Defendant-Appellant Nasser Ahmed Ameri appeals his conviction on eighteen counts related to production and possession of fraudulent documents, possession of document-making implements, social security fraud, theft of trade secrets (software), computer fraud, identity theft, possession of ammunition by an illegal alien, and

making false statements.  He argues that the district court[1] erred by finding him competent to stand trial, excluding him from the courtroom during his trial, and depriving him of his right to represent himself.  He also argues that the evidence was insufficient to support the district court's finding of an amount of loss under the Sentencing Guidelines.  Finally, he raises a Blakely/Booker sentencing issue that is related to the district court's finding regarding the amount of loss.  We affirm.

I.  Background

Mr. Ameri was an employee of a company hired by the State of Arkansas to develop and install secure document production software in facilities such as drivers' license stations.  Mr. Ameri stole a copy of the software and used this software along with other tools of the trade to produce high-quality, false identification documents and to perpetrate various forms of fraud.  He is a Yemeni national who, in the course of the investigation into his fraud and false document offenses, claimed to be a terrorist, claimed involvement with a plot to bomb the 2002 Winter Olympic Games in Salt Lake City, Utah, and identified numerous individuals purportedly involved in jihad-related activities.  His claims regarding Salt Lake City and the named individuals were false.  However, he made these claims less than six months after the September 11, 2001 attacks on the World Trade Center and the Pentagon, and the government took his claims seriously.  This caused the government to expend considerable resources and disrupted the lives of the people he falsely named as terrorists.

The evidence against Mr. Ameri as to his various offenses was overwhelming and we need not recite it here.  The important facts for this appeal relate to the manner in which the district court conducted the trial and the evidence that supported the

---

[1]The Honorable William R. Wilson, Jr., United States District Judge for the Eastern District of Arkansas.

district court's finding under U.S.S.G. § 2B1.1(b)(1) as to the amount of loss. We discuss these facts and issues below.

II. Trial Issues

Prior to the start of trial, the district court granted a government request for a psychological examination to determine Mr. Ameri's competency to stand trial. The government's examiners observed Mr. Ameri over a period of thirty days and found him to be free from mental disease or defect and competent to stand trial.

In pretrial motions, Mr. Ameri, on his own and through his second appointed attorney, alleged that FBI agents had drugged him with a "truth serum," made a videotape of an interview with him, and refused to disclose the videotape. The district court explored these issues in a hearing, found Mr. Ameri's allegations incredible, and denied his motions.

A confusing discussion then ensued. It appeared that Mr. Ameri challenged the court's jurisdiction, demanded discovery, demanded a continuance, and demanded to represent himself. The district court denied his requests for further discovery and a continuance. The district court then made clear the basis of its jurisdiction, explained the limited availability of discovery in criminal cases, and strongly encouraged Mr. Ameri to accept representation. The issue of representation was intertwined with Mr. Ameri's demand for discovery. He appeared concerned that the government attorneys had boxes of materials whereas his lawyer did not know all of the facts. Mr. Ameri, however, did not understand the rules of procedure and refused to agree not to disrupt the trial if allowed to proceed without counsel. The district court suggested that he accept the assistance of counsel, represent himself as to the facts and allow counsel to help him as to matters of law and procedure. Mr. Ameri objected and stated that since he didn't understand the rules of procedure, the trial would be unfair and the court "might as well just lock me in the cell, your Honor."

The district court responded, "We're going to have a trial, and I note your objection and I overrule your objection to proceeding in the way we're going to proceed. Your exception is saved."

After a short recess, during which Mr. Ameri apparently declared that he did not want to be present for the trial, the district court questioned Mr. Ameri about participating in the trial. The district court initially told Mr. Ameri:

> Here's what I'm going to do: I'm not going to order you to participate, but I'm going to order you to be here. And in case you change your mind and want to help your lawyer, I urge you to try to help in your defense. Because you will receive a fair trial, whether you think you will or not. You will receive a fair trial. I'm going to order you to be here. But if you are disruptive, if you jump up and start talking and interrupt, I will have you removed. I don't want to do that. I want you to be here so you can confront your accusers and so you can help your lawyer if you – your lawyer will need help from you. But I'm – all I'm doing, I'm ordering you at this point to be present, and you will be present during the proceedings until such time as you become disruptive or don't act right, and then I may remove you from the courtroom. I don't want to do that, because I want you to be here.

Mr. Ameri then stated, "Well your honor, how can I participate in an injustice fair trial, your Honor?"; "I really don't want to be participating in an injustice trial, your Honor. This is injustice."; "So, your Honor, I don't have a right to not be participating? Because I'm not consenting for participating, your Honor." The district court then again told Mr. Ameri that he was required to be present. Mr. Ameri protested and the following exchange took place:

> Mr. Ameri: Your Honor, I'm not gonna allow them to give me injustice, your Honor. This is America. They can't do this to me. I gotta be in contempt of court. Throw me out, your Honor.

-4-

I'm not going to participate in an injustice trial, your Honor.

The Court: In other words, you're going to be disruptive? You're going to jump up and talk during the trial?

Mr. Ameri: Well, how, your Honor, you going to let somebody injust you like this?

The Court: You have just earned your right to go to the lock-up. We'll be in recess. Let's bring the jury up. Let me tell you something: I'm going to inform the jury that you had an opportunity to be here, but you chose not to be here.

Mr. Ameri: I didn't choose, your Honor. It's just injustice, your Honor. It is unfair, your Honor.

Following another recess, the district court, the prosecutor, and Mr. Ameri's attorney discussed how to explain Mr. Ameri's absence to the jury. The district court decided to take extra time at recesses to allow Mr. Ameri's attorney to ask him if he had changed his mind about participating in the trial. In this discussion, Mr. Ameri's attorney stated, "I don't know necessarily how we could make it any – how I could soften the blow, but Mr. Ameri did have the right to participate; he just chose not to participate. I don't think we can say anything differently."

The attorneys and the court then discussed how to handle the issue of having a witness identify Mr. Ameri if Mr. Ameri was not present. In response to a suggestion that Mr. Ameri be brought into the courtroom merely for identification purposes, Mr. Ameri's attorney stated, "Your Honor, I would object to that. He has chosen not to participate. That is his right, and that would be a formal forced participation to bring him back in here."

Prior to the first day of the trial, the district court spoke with Mr. Ameri in the courtroom, and again, Mr. Ameri would not agree to participate. Prior to the second day of the trial, Mr. Ameri's counsel notified the court that she had discovered that the jail had not been supplying Mr. Ameri with an anti-depression drug that he was

supposed to be receiving. Concerned that the absence of this drug might have rendered Mr. Ameri incompetent, the district court decided to have Mr. Ameri re-evaluated for competency, but continued with the trial.

Later in the trial, Mr. Ameri's attorney conveyed messages from Mr. Ameri to the district court:

Counsel:    Your Honor, Mr. Ameri just wanted me to inform you, although he has not been a part of these proceedings, he wanted me to impress upon the Court that the Court should not be upset with him and hold that against him. So I wanted to make the Court aware of his concern regarding that.

The Court:    But he does not want to be here?

Counsel:    He does not want to be here because he does not believe he can receive a fair trial.

The Court:    You can assure him that I'm not upset. He would have been entirely welcome had he exercised his right to be here. At the same time, if he wanted to exercise his right not to be here, I'm not going to fuss at him.

On a later day, a similar exchange took place in which counsel for Mr. Ameri conveyed Mr. Ameri's concern and assured the court that Mr. Ameri knew he had a right to be present but did not wish to be present.

The transcript of the discussions surrounding Mr. Ameri's requests, partially excerpted above, are confusing because Mr. Ameri repeatedly interrupted other speakers and made conflicting demands upon the court (a request to represent himself and a request to exercise his right not to participate in the trial). Our review of the record, however, makes clear that the district court attempted to understand and accommodate Mr. Ameri's conflicting demands. Given Mr. Ameri's conflicting demands, his desire not to participate, and his refusal to agree not to disrupt the trial,

it was not an abuse of discretion for the district court to fashion a trial procedure that honored Mr. Ameri's right not to participate. United States v. Shepherd, 284 F.3d 965, 967 (8th Cir. 2002) (standard of review). The district court ensured that Mr. Ameri had the option of returning to the courtroom by calling Mr. Ameri into the courtroom and discussing the status of Mr. Ameri's wishes with counsel. Our review of the transcript convinces us that Mr. Ameri did, in fact, demand to be absent.

Mr. Ameri argues that he is entitled to a new trial because the district court deprived him of his rights to confront his accusers and represent himself. He argues in particular that the district court was required to permit him the opportunity to be present and to order him from the courtroom only upon his actual disruption of the trial. See Moore v. Purkett, 275 F.3d 685, 688 (8th Cir. 2001) (noting that courts "must indulge every reasonable presumption against the loss of constitutional rights"). Had Mr. Ameri not requested to be absent from the courtroom, his arguments might carry more weight.

In effect, Mr. Ameri boycotted the trial because he believed the process to be unfair. Upon having his requests for discovery and a continuance denied, he simply refused to cooperate. When a defendant, through a lack of cooperation, puts the district court in the impossible situation of having to choose between honoring a defendant's request for self-representation and repeated requests to be absent from the courtroom, the defendant has constrained the district court's discretion. Under such circumstances, we do not ask what the district court might have done in an ideal situation or what the district court might have done had the defendant actually demanded the opportunity to be present. We ask instead whether the district court abused its limited discretion under the constrained circumstances created by the defendant. In this case, it is clear that the district court acted appropriately under the circumstances.

Returning to the issue of competency, two experts examined Mr. Ameri for competency following the revelation at trial that he had not been given his anti-depression medications. The defense offered the testimony of an experienced psychiatrist who examined Mr. Ameri and pronounced him incompetent to stand trial. The state offered the testimony of a relatively inexperienced psychologist who was part of the team that had examined Mr. Ameri for thirty days prior to trial. She examined him again for two hours before testifying. The psychologist testified that Mr. Ameri was malingering. She concluded that it was cruel not to provide Mr. Ameri with his medicine but that the lack of medicine had not rendered him incompetent. After hearing the opinions, the district court found that Mr. Ameri was competent.

Mr. Ameri now challenges the district court's reliance on the opinion of the psychologist, arguing that the psychologist was unqualified due to her lack of a medical degree and her relative inexperience. Although the psychologist was not licensed to prescribe medicine, she was qualified to opine as to whether Mr. Ameri, as observed, was competent to stand trial. Mr. Ameri's challenge is therefore a challenge to the district court's assessment of competing expert opinions. The election between the two competing opinions from qualified experts by the district court judge (who witnessed their testimony and interacted with Mr. Ameri) was not clear error.

III. Sentencing Issues

The district court in this case sentenced Mr. Ameri to ninety-six months imprisonment, ordered him to pay restitution of $1.4 million to the contractor from whom he stole the software, and ordered him to pay $14,000 restitution to the Department of Housing and Urban Development from which he had received benefits under false pretenses. The district court also ordered that $25,000 seized from Mr. Ameri's apartment be applied as a payment towards restitution. In determining a

Guidelines Sentence of ninety-six months, the district court applied a sixteen level enhancement under U.S.S.G. § 2B1.1(b) because the amount of loss, as determined by the district court, $1.4 million, was greater than $1 million but less than $2.5 million. Mr. Ameri characterizes the district court's loss determination as clear error and the enhancement and restitution order based on that determination as Sixth Amendment, Blakely/Booker violations.

The district court sentenced Mr. Ameri after Blakely v. Washington, 124 S.Ct. 2531 (2004), but before United States v. Booker, 125 S.Ct. 738 (2005). Anticipating Booker's application of Blakely to the federal sentencing regime, the district court applied the Sentencing Guidelines as merely advisory. The district court stated, "The Court has found the Guidelines unconstitutional. However, using the Guidelines as a guide, the Court imposed a sentence within the Guideline range."

We now know that the Guidelines are to be used to obtain a "Guidelines Sentence" which then becomes but one factor for a sentencing court to consider under 18 U.S.C. § 3553(a). See United States v. Pirani, 406 F.3d 543 (8th Cir. Apr. 29, 2005) ("The effect of [the Booker] remedy . . . is an advisory Guidelines system in which sentencing judges continue to 'take account of the Guidelines together with [the] other sentencing goals' enumerated in 18 U.S.C. § 3553(a)") (quoting United Booker, 125 S.Ct. at 765). Also, judicial fact-finding does not offend the Sixth Amendment if the sentencing court does not treat the resultant Guidelines Sentence as mandatory. See United States v. Haack, 403 F.3d 997, 1003 (8th Cir. 2005). Because Mr. Ameri does not contest the fact that the district court in this case treated the Guidelines as advisory, Mr. Ameri's Sixth Amendment challenge fails.

Mr. Ameri's challenges to the district court's loss calculation and the overall sentence, however, remain. As before Booker, we review the district court's application of the Guidelines de novo to ensure the proper determination of a Guidelines Sentence. United States v. Mathijssen, 406 F.3d 496, 498 (8th Cir. 2005).

We review the sentence actually imposed only for reasonableness in light of the Guidelines Sentence and other, relevant § 3553(a) factors. Id.; Booker, 125 S.Ct. at 765. When reviewing the sentencing court's Guidelines determinations, we review underlying factual findings only for clear error. Mathijssen, 406 F.3d at 498. We extend particular deference to the district court's loss determinations because, under the Guidelines, "[t]he court need only make a reasonable estimate of the loss. The sentencing judge is in a unique position to assess the evidence and estimate the loss based upon that evidence." U.S.S.G. § 2B1.1,cmt. n.3(C); United States v. Frank, 354 F.3d 910, 927 (8th Cir. 2004).

The district court heard evidence of loss, including estimates of the value of the software, at the trial. The district court also held a first sentencing hearing after which it was not comfortable with its understanding of the amount of loss. The district court then held second and third sentencing hearings to fully explore the issue of loss. The evidence introduced at trial and at these hearings demonstrated that: the stolen software was at the heart of the contractor's $10 million contract with the State of Arkansas; the contractor's software rather than the contractor's other services comprised the bulk of the value for its clients; the software was developed specifically to ensure security and deter counterfeiting in the production of state identification documents; development cost for the software was about $700,000; the software was not generally available for sale separate from an installation contract so there was not a verifiable "fair market value"; an employee of the contractor estimated the fair market value for a copy of the software to be about $1 million; the contractor maintained the software on secure hard drives and did not make copies on disc; Mr. Ameri possessed two discs with stolen copies of the software; the contractor estimated that it spent between 300 and 500 man hours over the course of two years dealing with the fallout from the software theft; the software remained in service in many states and the contractor did not have to "repair" the software.

Further, the record reflects that Mr. Ameri fully understood the value of the software. During an encounter where he tried to solicit the aid of a former classmate to produce documents for illegal aliens, Mr. Ameri offered the classmate the opportunity to earn $200,000 through use of the software. Also, other victims included the Arkansas Department of Motor Vehicles, the Department of Housing and Urban Development, the United States government, and eighteen individuals whose personal information was stolen.

Mr. Ameri challenges the loss calculation alleging that the contractor's own estimates of the value of its software were tainted by self interest, not reflective of the fact that the software could still be used, and unsupported by anything but speculation. He correctly notes that we held in United States v. Rivers, 917 F.2d 369, 372-73 (8th Cir. 1990), that "[a]lthough an owner's hearsay opinion as to the value of property may be considered for sentencing purposes, such evidence should not be based on hypothesis, conjecture, or speculation alone." The present case, however, differs considerably from Rivers. In Rivers, personal items were stolen from a home, the victim was not available to testify, and the prosecutor introduced a hearsay report of the victim's estimates of the value of the stolen property. There was no supplemental evidence to support the owner's estimates in Rivers. Here, there is a contract that places the value of the software substantially above the figure adopted by the court. Further, the contractor's employees testified as to their estimates of development costs and also as to their estimates of the value of a single copy of the software in light of the development costs and in light of the value of the overall contract with the State. The software professionals in the present case, unlike the owner of stolen property in Rivers, testified as to the market for a specialty product that was the subject of a recent transaction. We do not believe the district court ran afoul of the rule set forth in Rivers.

Finally, we note again that the Guidelines do not demand precision in loss calculations. See U.S.S.G. § 2B1.1,cmt. n.3(C) ("The court need only make a

reasonable estimate of the loss."). Because the district court is entitled to particular deference on the issue of loss calculations, Mr. Ameri faces a heavy burden, which he has not met. We find that the district court in this case properly applied the Guidelines to determine an appropriate Guidelines Sentence and reached no clearly erroneous factual conclusions. We also conclude that the sentence imposed was reasonable.

The judgment of the district court is affirmed.

_____