# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 06-1628

———————

United States of America,

       Appellee,

    v.

Scott J. Levine,

       Appellant.

Appeal from the United States
District Court for the Eastern
District of Arkansas.

———————

Submitted: December 12, 2006
Filed:  February 21, 2007

———————

Before WOLLMAN, BEAM, and RILEY, Circuit Judges.

———————

BEAM, Circuit Judge.

Scott J. Levine was charged in a 144-count indictment, alleging conspiracy to access a protected computer without authority, unauthorized access of a protected computer, money laundering, possession of unauthorized access devices, and attempted obstruction of justice.  A jury found Levine guilty of counts 20-54 and 56-140 (aiding and abetting the unauthorized access of protected computers), counts 142 and 143 (aiding and abetting the possession of unauthorized access devices), and count 144 (aiding and abetting obstruction of justice).  Levine was acquitted of all

other counts, except for six counts, which the government dismissed. The district court[1] denied his motion for judgment of acquittal or in the alternative for new trial.

Levine now appeals claiming (1) that evidence of prior legal problems involving the Securities and Exchange Commission (SEC) and financial records showing Levine's "lavish personal expenditures" were improperly admitted; (2) that the trial court should have submitted the issue of financial loss to the jury by special verdict; (3) that the trial court improperly responded to a jury question posed during deliberations; (4) that the evidence was insufficient to support his conviction on aiding and abetting unauthorized access to protected computers; and (5) that notice was required under Federal Rule of Criminal Procedure 32(h) before the district court could depart from Levine's properly calculated advisory Guideline sentencing range.

## I.    BACKGROUND

A federal grand jury indicted Levine for the counts recited above based on activity conducted at Snipermail.com, Inc., a corporation Levine controlled. Snipermail provided its customers with personal e-mail addresses of individuals who had expressed interest in that customer's line of business. In the course of Snipermail's business, it earned a sub-contract from entities working for "Company No. 1," which in turn was a customer of Acxiom Corporation, one of the world's largest repositories for personal, financial, and corporate data.

The relationship between Snipermail, Acxiom, and Company No. 1 allowed Snipermail to access Acxiom's "FTP" server, which is a method of communication used to send and receive files, spreadsheets, and other documents through the Internet. The indictment charged that, while Snipermail's relationship with Company No. 1

---

[1]The Honorable William R. Wilson, United States District Judge for the Eastern District of Arkansas.

allowed access to some files on Acxiom's FTP server, Levine and other employees of Snipermail found a way to access files which they were not authorized to access and downloaded those files. To grant themselves greater access to unauthorized files, Levine and his employees deciphered encrypted password files belonging to Acxiom. When Acxiom noticed the downloads and the criminal investigation began, Levine and his employees sought to alter and conceal computer hard drives in an attempt to thwart the investigation, resulting in an obstruction of justice charge.

## II.    DISCUSSION

Levine raises five issues on appeal, each of which is explained in its factual context and discussed below.

### A.  Admission of Prior SEC Trouble and Financial Records

Levine challenges two of the trial court's decisions–one allowing witnesses to testify that Levine "had a problem with the SEC" and the other admitting financial records showing Levine's personal expenditures. Levine argues that the evidence was irrelevant and unduly prejudicial, and thus inadmissible under Federal Rule of Evidence 403.

Challenges to a district court's evidentiary rulings are reviewed for abuse of discretion. United States v. Johnson, 463 F.3d 803, 808 (8th Cir. 2006). We will only reverse if the error rises beyond the level of harmless error. Id. Further, we are not bound by the grounds on which the district court admitted the evidence, as "[i]t is a well-settled principle that we may affirm a district court's judgment on any basis supported by the record." United States v. Pierson, 219 F.3d 803, 807 (8th Cir. 2000).

Rule 403 notes that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. However, Rule 403 "does not offer protection against evidence that is merely prejudicial in the sense of being detrimental to a party's case. The rule protects against evidence that is unfairly prejudicial, that is, if it tends to suggest decision on an improper basis." Wade v. Haynes, 663 F.2d 778, 783 (8th Cir. 1981), aff'd sub nom. Smith v. Wade, 461 U.S. 30 (1983).

Regarding the prior SEC trouble, the government sought to introduce evidence that Levine had a civil sanction entered against him for violation of securities laws, requiring Levine to list Mike Castro, rather than himself, as President of Snipermail. Specifically, the government argued that the structure of Snipermail was relevant both to show Levine's pattern and practice of fraud as well as showing the true structure of the company to support the conspiracy charge against Levine and to refute Levine's defense that his employees conspired to frame him for the conduct charged. Levine suggested that the prior SEC dealing was dissimilar to the current charges, and that it was uncontested that he, rather than Castro, actually controlled the company, making the evidence inadmissible under Federal Rules of Evidence 403 and 404. However, during opening statements, after explaining the personnel structure of Snipermail, Levine's counsel suggested that the company's personnel "expanded because Mr. Levine had two left thumbs or two left feet . . . when it came to computers" and "that Mr. Levine had to have somebody else send his e-mails."

The trial court characterized the remarks during opening statement as "assert[ing] that Defendant put others out front for innocent reasons." The district court then ruled that the evidence was not admissible under Rule 404(b), but rather was admissible as an admission under Fed. R. Evid. 801(d)–"Statements which are not

hearsay."  The court, however, strictly limited the evidence to only mentioning that Levine "had a problem with the SEC."

Because the basis of Levine's objection to the admission of the evidence was relevance rather than hearsay, the court's ruling as to the evidence's admissibility under a hearsay rule does not answer Levine's objection.  However, having reviewed the record, we find that the admitted evidence was relevant and did not unfairly prejudice Levine under Rule 403.[2]

Levine opened the door to this evidence during opening statement by offering, as the district court found, an "innocent reason" for the structure of Snipermail. Further, Levine's defense, in part, suggested that other employees of Snipermail engaged in a conspiracy to frame Levine for the charged crimes.   Both the charged conspiracy and Levine's theory of defense involved conspiracies within Snipermail, making the structure of the organization relevant.  Given that the information had relevance, and that the trial court severely limited the information regarding the prior adjudication that could be admitted, we cannot say that it was an abuse of discretion to allow witnesses to testify that Levine "had a problem with the SEC," particularly when the district court found that Levine suggested a different reason for the corporate structure in his opening statement.

As to the financial records, the government sought to introduce corporate credit cards, corporate bank accounts, and two checking accounts of the Levine Family Partnership, a part owner of Snipermail, to prove that Levine benefitted financially from the stealing of Acxiom data.  Levine objected on the ground that the unfair

---

[2]Levine's objection at trial was largely based on improper character evidence under Rule 404(b). However, the trial court only admitted the statement that Levine "had a problem with the SEC."  Levine now appears to argue that this evidence's probative value outweighed its prejudicial effect, that is, that he "had a problem with the SEC" is inadmissible under Rule 403.

prejudice of the records outweighed any probative value, given that it was not contested that Levine controlled Snipermail and made a salary of over $600,000 per year. After hearing argument, the trial court received the documents as evidence.

The trial court noted that Levine's conspiracy "theory of defense makes this evidence admissible." This defense involved submitting evidence of the finances and salaries of other employees of Snipermail, as well as the lifestyle of at least one of their spouses–specifically, that she drove a luxury car.

In light of Levine's chosen defense of airing the finances and lifestyles of his employees, we cannot say that it was an abuse of discretion for the trial judge to find that the relevance of Levine's own finances and lifestyle outweighed any unfair prejudice. Aside from Levine's defense, the evidence was also relevant to the government's theory that Levine's Snipermail business was failing financially and that the data taken from Acxiom had economic value, providing Levine a motive for the crime.

Given that under "Rule 403[] the general rule is that the balance should be struck in favor of admission," United States v. Dennis, 625 F.2d 782, 797 (8th Cir. 1980), and that we "must give great deference to the trial judge who saw and heard the evidence," id. at 796, we cannot say that the trial court abused its discretion in admitting either the limited mention of prior SEC problems or the financial records.

## B. Determination of Loss

Levine requested that the trial court submit a special jury verdict form to allow the jury to determine the amount of loss stemming from each count charged in the indictment. The government objected and the district court denied the request. It appears that Levine argues that the trial court erred both by not submitting the issue to a jury and by finding the loss equaled $850,000.

In reviewing sentencing decisions, "we review the district court's application of the Guidelines de novo to ensure the proper determination of a Guidelines Sentence." United States v. Ameri, 412 F.3d 893, 899 (8th Cir. 2005), cert. denied, 126 S. Ct. 1415 (2006). When reviewing a district court's factual findings underlying Guidelines determinations, we will reverse only if the court clearly erred. Id.

Levine argues that the district court erred in making the loss determination by itself, rather than by submitting the issue to the jury. The finding that the loss equaled $850,000 was not a fine imposed upon Levine, but rather was part of the trial court's calculation of Levine's advisory Guideline sentencing range. Specifically, the amount of loss caused by Levine's relevant conduct was a specific offense characteristic under U.S.S.G. §2B1.1(b)(1). We have previously recognized that submitting the matter of loss to a jury is unnecessary. See United States v. Washburn, 444 F.3d 1007, 1014 (8th Cir. 2006) (affirming the trial court's decision to exceed the jury's loss finding because "the jury's finding was mere surplusage, as there was no need to submit the matter of the loss amount to the jury"). We hold that the district court properly denied Levine's motion for a special verdict form on loss amount, following our precedent in Washburn.

Though less clear, Levine also seems to argue that the court's finding of fact that the loss amount equaled $850,000 was incorrect because "the Court punished Mr. Levine for crimes that were not specifically pled in the indictment." We review findings of fact for clear error. Ameri, 412 F.3d at 899.

Various amounts of loss were suggested to the court. The pre-sentence report calculated the loss amount as $58,236,781.64. The government contended that Levine was responsible for $6,798,721 in loss. Levine contended alternatively that the actual or intended loss was zero, or that 95% of the stolen e-mail addresses could be purchased for under $5,000, or that a similar criminal case involving stolen Acxiom files could be used, where the value of each file was found to be $170 per file, which,

when multiplied by the number of files Levine was convicted of stealing, would equal a loss of approximately $30,000. Multiplying the $170 figure by the number of indicted charges, the loss equaled $893,000, which Levine submitted "represent[ed] the absolute highest [amount] that a reasonable person" could find as the value of the stolen files.

Given that Levine's counsel conceded that a reasonable person could arrive at a loss amount of $893,000, we cannot say that the district court clearly erred by setting the loss amount at $850,000. As this court has noted before, the commentary to U.S.S.G. §2B1.1(b)(1) requires us to give the district court "particular deference on the issue of loss calculation[]," placing a "heavy burden" on the defendant, which Levine has not met. Ameri, 412 F.3d at 901.

We thus affirm both the district court's decision not to submit the issue of loss calculation to the jury and the court's decision regarding the amount of loss.

## C. Response to Jury Question During Deliberation

Levine challenges a response given by the court to a jury question posed during deliberation.

At trial, evidence was presented that Levine owned a laptop computer which contained both personal files as well as files relating to Snipermail sales. The laptop subsequently crashed, requiring Levine and other Snipermail employees to send the hard drive to a professional data recovery company. Once recovered, the data was returned to Snipermail on compact discs. The government introduced testimony that Snipermail sales data recovered from the crashed computer was not on Levine's laptop that was surrendered to law enforcement. Additionally, the same witness testified that a program that deletes files in a manner making them difficult to recover was operated on the morning that Levine turned the laptop over to law enforcement.

-8-

During deliberation, the jury struggled with Instruction No. 22 and Count 144, the instruction and charge on obstruction of justice. The jury asked "[d]o we follow the letter of the indictment when it refers to Instruction 22?" In an attempt to better understand the jury's question, the trial court asked for clarification and received the following question from the jury: "Are the deletion of files from the laptop being considered in [the obstruction of justice count]?" After extended argument from the parties, during which Levine's counsel conceded that the deletion of the files relating to Acxiom could be considered in relation to Count 144, the court responded "Yes" to the jury's question. Levine claims that this response "permitted the jury to convict Mr. Levine for erasing any file even if it did not relate to Acxiom in any fashion."

In reviewing a trial court's response to a jury's question, we leave the response "within the sound discretion of the district court." United States v. Morrison, 332 F.3d 530, 532 (8th Cir. 2003) (quotation omitted). However, the "trial court must take great care to insure that any supplemental instructions are accurate, clear, neutral, and non-prejudicial," answering "with concrete accuracy, and within the specific limits of the question presented." Id. (quotation omitted).

Levine contends that because the court's answer was simply "Yes" rather than "[Y]es, if it pertains to Acxiom directly or indirectly," as Levine's counsel preferred, the jury might have convicted Levine on the deletion of personal files. This argument fails. The court's "Yes" answer is not to be viewed in isolation. As this court has noted, "[w]ell settled is the rule that jury instructions must be read as a whole." Ryther v. KARE 11, 108 F.3d 832, 846 (8th Cir. 1997) (en banc). On review we "presume[] that jurors, conscious of the gravity of their task, attend closely the particular language of the trial court's instructions in a criminal case and strive to understand, make sense of, and follow the instructions given them." Francis v. Franklin, 471 U.S. 307, 324 n.9 (1985). In this case, the court reminded the jury that "all [instructions] are important." Further, the court instructed the jury that to convict Levine for obstruction of justice they must find that "the defendant corruptly

concealed hard drives or attempted to do so" and that "the defendant did so with the intent to impair the hard drives' integrity or availability for use in an official proceeding," and that they must be convinced of these two elements beyond a reasonable doubt.

Presuming, as we must, that the jury followed the court's instructions taken as a whole, and in light of Mr. Levine's admission that deletion of files relating to Acxiom could properly be considered as obstruction of justice under Count 144 of the indictment, we cannot say that the district court abused its discretion by answering "Yes" to the jury's question during deliberation.

## D.  Denial of Motion for Acquittal and Sufficiency of the Evidence

After the jury returned its verdict, Levine filed a motion for judgment of acquittal, arguing, in part, that "there is insufficient evidence as a matter of law to sustain the jury's verdict" on the unauthorized access of a protected computer counts. The district court denied this motion.  Levine now appeals, arguing that the evidence for counts 20 through 54 and 56 through 140 was insufficient.

When the defendant claims insufficient evidence, we review the district court's denial of a motion for judgment of acquittal by employing "a strict standard of review . . . viewing the evidence in the light most favorable to the guilty verdict, resolving all evidentiary conflicts in favor of the government, and accepting all reasonable inferences supported by the evidence."  United States v. No Neck, 472 F.3d 1048, 1052 (8th Cir. 2007).  Further, "[w]e will not lightly overturn the jury's verdict and will reverse only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt."  Id.

Here, the grand jury indicted Levine in counts 20 through 140 of intentionally accessing a computer without authorization by means of interstate communication for

a commercial or personal advantage valued at over $5000. In his motion for judgment of acquittal, Levine argued that each count related to a specific file and that the government failed to offer direct proof that Levine himself downloaded the files. We note, however, that the government need not prove its case by direct evidence. See, e.g., United States v. Frokjer, 415 F.3d 865, 869 (8th Cir. 2005) (noting that circumstantial evidence is sufficient for conviction).

The evidence in this case is voluminous. Having reviewed that evidence, we cannot say that "no reasonable jury could have found the defendant guilty beyond a reasonable doubt." No Neck, 472 F.3d at 1052. Employees of Snipermail testified that Levine was instructed on how to use a password to access the Acxiom server, that he had the master password file for Acxiom, and that he received assistance in decoding encrypted passwords on that file. The jury also heard evidence regarding the financial struggles of Snipermail, giving Levine a motive to commit the charged conduct. Further, the jury heard evidence that one employee, Bill Clinton, admitted to using his computer to download improper data and that Levine often worked at Clinton's computer.

Though Levine claims that the lack of an eye-witness requires reversal of his conviction, in light of this evidence we disagree, and affirm the district court's denial of Levine's motion for judgment of acquittal.

### E.  Propriety of 96-Month Sentence

Finally, Levine appeals his sentence, arguing that the district court "departed" from the Guidelines without giving the parties notice, as required by Federal Rule of Criminal Procedure 32(h). Levine also contests the reasonableness of the 96-month sentence imposed. We review conclusions of law, such as entitlement to notice, de

novo. <u>United States v. Long Soldier</u>, 431 F.3d 1120, 1122 (8th Cir. 2005).[3] We review the actual sentence imposed for abuse of discretion. <u>Id.</u> at 1123. An abuse of discretion occurs when the "sentencing court . . . fails to consider a relevant factor that should have received significant weight, gives significant weight to an improper or irrelevant factor, or considers only the appropriate factors but commits a clear error of judgment in weighing those factors." <u>Id.</u> (citing <u>United States v. Haack</u>, 403 F.3d 997, 1004 (8th Cir.), <u>cert. denied</u>, 126 S. Ct. 276 (2005)).

Federal Rule of Criminal Procedure 32(h) requires that a court give notice to the parties before it departs from the applicable Guidelines range on a basis not identified in either the pre-sentence report or the parties pre-hearing submissions. Fed. R. Crim. P. 32(h). This rule, added by amendment in 2002, has not been amended since <u>United States v. Booker</u>, 543 U.S. 220 (2005), which made the Guidelines advisory.

As to the notice required by Rule 32(h), such notice "is not required when the adjustment to the sentence is effected by a variance, rather than by a departure." <u>Long Soldier</u>, 431 F.3d at 1122. Here, the trial court announced its Guideline calculations, to which neither party objected, other than Levine advising the court that the Guidelines were only advisory. The court then announced Levine's sentence of "60 months on Counts 20 through 54 and 56 through 140, [and] 96 months on Counts 142, 143, and 144, to run concurrently, for a total of 96 months." The court then said "This

---

[3]Levine's notice argument is most likely subject to plain error review, given that we can find no objection to the lack of notice made at sentencing. <u>See, e.g.</u>, <u>United States v. Ruff</u>, 472 F.3d 1044, 1047-48 (8th Cir. 2007). In fact, Levine's counsel encouraged the court to sentence below the advisory range, noting that "since [the Guidelines are] no longer mandatory, it would not require a formal departure." However, because the government did not raise the lack of objection and because the result under either standard is the same, we give Levine the benefit of the doubt and review de novo.

is a nonguideline sentence.  It's a variance sentence.  I took the steps established in U.S. v. Sitting Bear."

The court correctly termed its sentence as a variance rather than a departure. See United States v. Sitting Bear, 436 F.3d 929, 932 (8th Cir. 2006) (noting that Sitting Bear's sentence "was a non-Guidelines sentence, a variance if you will, based upon the district court's review of the case and Sitting Bear's history in light of all of the § 3553(a) sentencing factors.").  The sentencing court in Levine's case considered various factors, including the prior SEC adjudication, the factors in 18 U.S.C. § 3553(a), and Levine's character witness and letters.  Thus, the court's proper consideration of these factors and the facts of the case, its indication that it was following Sitting Bear (itself a variance case), and the court's announcement that the sentence was actually a variance all confirm that under the rule of Long Soldier, Levine was not entitled to notice under Rule 32(h).

Reviewing the reasonableness of the 96-months' incarceration imposed, we cannot say that the court abused its discretion.  Levine primarily argues that he received an unreasonable upward departure for criminal history.  However, as established above, no departure was given.

In varying up from the advisory Guideline level of 26 and a criminal history category of I, corresponding to an advisory range of 63 to 78 months' imprisonment, the court focused on the fact that in his prior SEC trouble "Mr. Levine blatantly and inexcusably violated the securities law by a scheme."  Further, the pre-sentence report did not calculate this securities law violation into Levine's criminal history.  Section 3553(a) states that the sentencing court "shall consider – (1) the nature and circumstances of the offense and the history and characteristics of the defendant."  18 U.S.C. § 3553(a)(1).  Because the district court gave weight to a factor specifically identified in 18 U.S.C. § 3553(a) as a factor that the court "shall consider," we cannot

say that the court abused its discretion in doing so.  Accordingly, the 96-month sentence was reasonable.

## III.  CONCLUSION

For the reasons above, we affirm Levine's conviction and sentence.

_____