UNITED STATES of America,
Plaintiff,

v.

Robert Earl COLE, a/k/a Reggie
Anderson, Defendant.

No. 06–CR–106–3–LRR.

United States District Court,
N.D. Iowa,
Cedar Rapids Division.

July 3, 2007.

Charles J. Williams, U.S. Attorney's Office, Cedar Rapids, IA, for Plaintiff.

## SENTENCING MEMORANDUM

READE, Chief Judge.

### TABLE OF CONTENTS

I. INTRODUCTION ................................................... 959

II. RELEVANT PROCEDURAL BACKGROUND ............................... 959

III. THREE–STEP PROCESS ........................................... 960

IV. THE ISSUES ................................................... 960

V. ADVISORY SENTENCING GUIDELINES RANGE .......................... 961
   A. Possession of Three or More Firearms—USSG § 2K2.1(b)(1)(A) ............. 961
   B. Possession of a Firearm in Connection with Another Felony Offense—
      USSG § 2K2.1(b)(5) ......................................... 963
   C. Obstruction of Justice—USSG § 3C1.1 ........................... 964
   D. Acceptance of Responsibility—USSG § 3E1.1 ...................... 965
   E. Conclusion ................................................ 966

VI. DISPOSITION .................................................. 966

## I. INTRODUCTION

The matter before the court is the sentencing of Defendant Robert Earl Cole.

## II. RELEVANT PROCEDURAL BACKGROUND

On August 15, 2006, Defendant was charged with co-defendants Linda Darcell Gilbert ("Linda Gilbert") and Paul Matthew Gilbert ("Paul Gilbert") in a five-count Indictment. Defendant was charged in Counts 1, 2 and 4 of the Indictment.

Count 1 charged that, on about March 25, 2004, Defendant and Linda Gilbert possessed a firearm, that is, a weapon made from an Iver Johnson Champion model 12 gauge shotgun, no serial number, which had a barrel of less than 18 inches in length and an overall length of less than 26 inches, not registered to either of them with the National Firearms Registration and Transfer Record ("the Shotgun"). Defendant's possession of the Shotgun was alleged to be in violation of 26 U.S.C. §§ 5841, 5861(d) and 5871.

Count 2 charged that, on or about March 25, 2004, Defendant, a felon, having been convicted on or about November 19, 1991, in the Iowa District Court in and for Linn County of the crime of Failure to Appear, a crime punishable by more than one year in prison, and who was then an unlawful user of marijuana, a Schedule I controlled substance, knowingly possessed in and affecting commerce the following firearms: (1) the Shotgun; (2) a Federal Ordnance, .45 caliber pistol, Government Model, Serial Number F8902557 ("the .45") and (3) a Smith & Wesson, .22 caliber pistol, Model 422, Serial Number TBL7761 ("the .22"). Defendant's possession of the Shotgun, the .45 and the .22 was alleged to be in violation of 26 U.S.C. §§ 922(g)(1), 922(g)(3) and 924(a)(2).

Count 4 charged that, on or about August 19, 2005, Defendant, a felon, having been convicted on or about November 19, 1991, in the Iowa District Court in and for Linn County of the crime of Failure to Appear, a crime punishable by more than one year in prison, and who was then an unlawful user of marijuana, a Schedule I controlled substance, knowingly possessed in and affecting commerce the following firearm: a Smith & Wesson .44 caliber revolver, Model 629, serial number BNN8460 ("the .44"), in violation of 18 U.S.C. §§ 922(g)(1), 922(g)(3) and 924(a)(2).

On October 19, 2006, a unanimous federal jury found, beyond a reasonable doubt, that Defendant was guilty on all three counts.[1] The court submitted a special interrogatory to the jury with respect to Count 2, in order to determine the firearm(s) that Defendant possessed. The jury stated that it unanimously found, beyond a reasonable doubt, that Defendant possessed the Shotgun and the .45. The jury was unable to find beyond a reasonable doubt that Defendant possessed the .22.

On June 5, 2007, the United States Probation Office filed a Presentence Investigation Report ("PSIR"). On June 12, 2007, the government filed a sentencing memorandum. On June 13, 2007, the government filed a motion for upward departure, pursuant to USSG § 4A1.3 (Inadequacy of Criminal History Category). On June 14, 2007, Defendant filed his sentencing memorandum and a motion for downward variance.

On July 3, 2007, the court held a sentencing hearing ("Hearing"). Assistant

---

1. The jury also convicted Linda Gilbert of Count 1. It acquitted Paul Gilbert of Count 3 and Count 5.

United States Attorney Stephanie M. Rose represented the government. Attorney David E. Mullin represented Defendant, who was personally present.

At the Hearing, the court pronounced sentence in a manner consistent with the instant Sentencing Memorandum. The instant Sentencing Memorandum is designed to provide a more detailed understanding of the court's reasoning on some of the legal issues in the case. It is not comprehensive and should be read in conjunction with the record the court made at the Hearing.[2]

### III. THREE–STEP PROCESS

The Sentencing Guidelines are no longer mandatory. *United States v. Haack*, 403 F.3d 997, 1002 (8th Cir.) (discussing *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005)), *cert. denied*, 546 U.S. 913, 126 S.Ct. 276, 163 L.Ed.2d 246 (2005). They are advisory. *Id.* The Eighth Circuit Court of Appeals has explained that, in the post-*Booker* world, "there are essentially three steps to determining an appropriate sentence." *United States v. Sitting Bear*, 436 F.3d 929, 934 (8th Cir.2006).

First, the district court should determine the applicable Sentencing Guidelines range without consideration of any [Sentencing] Guidelines departure factors, because the [Sentencing] Guidelines remain an important sentencing factor. *See* 18 U.S.C. § 3553(a)(4). Second, the district court, where appropriate, should consider the departure provisions contained in Chapter 5, Part K and/or § 4A1.3 of the [Sentencing] Guidelines, as those sentencing provisions have not been excised by *Booker*. The resulting range is the post-*Booker* advisory [Sentencing] Guidelines range. Third, the district court should consider the rest of the § 3553(a) factors in determining whether to impose the "Guidelines sentence" as determined in the prior steps or a "non-Guidelines sentence" driven by the other § 3553(a) considerations, and sentence the defendant accordingly. *Haack*, 403 F.3d at 1003; *see also United States v. Denton*, 434 F.3d 1104, 1114 (8th Cir.2006) (reviewing the sentence imposed by the district court under the three-part *Haack* methodology).

*Id.* at 934–35. At the Hearing, the court adhered to this three-step process. The so-called presumption of reasonableness that attends to the advisory Sentencing Guidelines range in the Eighth Circuit Court of Appeals played no part in the court's analysis. *See Rita v. United States*, —— U.S. ——, 127 S.Ct. 2456, 2465, 168 L.Ed.2d 203 (2007) ("[T]he presumption applies only on appellate review.").

### IV. THE ISSUES

At the Hearing, the parties litigated a number of issues, including but not limited

---

2. The Supreme Court recently stated:

The appropriateness of brevity or length, conciseness or detail, when to write, what to say, depends upon the circumstances. Sometimes a judicial opinion responds to every argument; sometimes it does not; sometimes a judge simply writes the word "granted" or "denied" on the face of a motion while relying upon context and the parties' prior arguments to make the reasons clear. The law leaves much, in this respect, to the judge's own professional judgment.

*Rita v. United States*, 127 S.Ct. at 2468 (2007). What is important is that "[t]he sentencing judge ... set forth enough to satisfy the appellate court that [she] has considered the parties' arguments and has a reasoned basis for exercising [her] own legal decisionmaking authority." *Id.* (citing *United States v. Taylor*, 487 U.S. 326, 336–37, 108 S.Ct. 2413, 101 L.Ed.2d 297 (1988)). Less explanation is necessary where, as here, the court sentenced within the advisory Sentencing Guidelines range and did not grant a motion for a downward variance. *Id.*

to: whether the court should (1) apply a two-level enhancement, pursuant to USSG § 2K2.1(b)(1)(A) (2004), because Defendant possessed three or more firearms; (2) apply a four-level enhancement, pursuant to USSG § 2K2.1(b)(5), because Defendant possessed a firearm in connection with another felony offense; (3) apply a two-level enhancement, pursuant to USSG § 3C1.1, because Defendant obstructed justice; and (4) apply a two-level decrease, pursuant to USSG § 3E1.1, for acceptance of responsibility

At the Hearing, the court resolved these four issues, as well as others not discussed here. To the extent necessary, the court made factual findings under a preponderance-of-the-evidence standard. *See United States v. Bah,* 439 F.3d 423, 426 n. 1 (8th Cir.2006) ("[J]udicial fact-finding using a preponderance[-]of[-]the[-]evidence standard is permitted provided that the [Sentencing Guidelines] are applied in an advisory manner."). The government bore the burden of proof on all advisory Sentencing Guidelines issues, except Defendant's request for a reduction for acceptance of responsibility, pursuant to USSG § 3E1.1. *Compare United States v. Flores,* 362 F.3d 1030, 1037 (8th Cir.2004) (stating that the government bears the burden to prove sentencing enhancements), *with Peters v. United States,* 464 F.3d 811, 812 (8th Cir.2006) (stating that the defendant bears the burden to prove acceptance of responsibility).

## V. ADVISORY SENTENCING GUIDELINES RANGE

### A. Possession of Three or More Firearms—USSG § 2K2.1(b)(1)(A)

The first issue was whether the court should apply a two-level enhancement, pursuant to USSG § 2K2.1(b)(1)(A), because Defendant possessed three or more firearms.

In relevant part, USSG § 2K2.1(b)(1)(A) provides for a two-level increase to a defendant's base offense level, "if the offense involved" between three and seven firearms. USSG § 2K2.1(b)(1)(A). Further, the Commentary explains:

> For purposes of calculating the number of firearms under subsection (b)(1), count only those firearms that were unlawfully sought to be obtained, unlawfully possessed, or unlawfully distributed, including any firearm that a defendant obtained or attempted to obtain by making a false statement to a licensed dealer.

*Id.,* cmt. (n.6). " 'Possession may be actual or constructive, joint or sole.' " *United States v. Dass,* 178 Fed.Appx. 992, 996 (11th Cir.2006) (quoting *United States v. Gunn,* 369 F.3d 1229, 1234 (11th Cir. 2004)); *cf. United States v. Balanga,* 109 F.3d 1299, 1302 (8th Cir.1997) (affirming conviction under 18 U.S.C. § 922(g)(1) on theory of constructive possession).

In determining how many firearms were involved in the offense, the court may generally consider offense conduct and relevant conduct. USSG § 1B1.3; *see, e. g., United States v. Birk,* 453 F.3d 893, 899 (7th Cir.2006). Where, as here, multiple counts of conviction are grouped together pursuant to USSG § 3D1.2(d), relevant conduct includes "all acts and omissions described in [USSG § 1B1.3(a)(1)(A) and (1)(B) ] that were part of the same course of conduct or common scheme or plan as the offense of conviction." USSG § 1B1.3(a)(2); *see also United States v. Santoro,* 159 F.3d 318, 321 (7th Cir.1998) ("When a court determines the number of firearms involved in an offense under USSG § 2K2.1(b)(1), it looks to the relevant conduct section of the guidelines (USSG § 1B1.3(a)(2)) to determine how many firearms come within the same course of conduct or perhaps a common

scheme or plan." (Formatting altered and citations omitted.)).

The court found by a preponderance of the evidence that, when law enforcement officers raided a three-level residence at 373 Eighteenth Street SE, Cedar Rapids, Iowa ("the House"), on March 25, 2004, Defendant unlawfully possessed three firearms: the Shotgun, the .45 and the .22. The House was Defendant's residence. At such time, Defendant was a felon and a marijuana user. Law enforcement officers found the Shotgun in the second-level master bedroom under a mattress on Defendant's side of a bed, which he shared with Linda Gilbert. The law enforcement officers found the .45 under Defendant's pillow. They found the .22 near Defendant's bed in an armoire. All three firearms were found in areas over which Defendant had, at the very least, common control and authority. *See United States v. Wells*, 469 F.3d 716, 721 (8th Cir.2006) (holding that the district court did not clearly err in applying a USSG § 2K2.1(b)(1) enhancement, where the defendant knew about and had control over firearms in a house); *cf. United States v. Boykin*, 986 F.2d 270, 274 (8th Cir.1993) (holding that there was sufficient evidence to find that a defendant used a firearm in connection with a drug trafficking crime, in violation of 18 U.S.C. § 924(c), where the law enforcement officers found firearms in various places in a bedroom that the defendant shared with his wife). Linda Gilbert's admission that she owned the .22 does not alter the court's conclusion that Defendant also possessed it. *See Boykin*, 986 F.2d at 274 (stating that "ownership is irrelevant to the issue of possession" and affirming finding that the defendant constructively possessed firearms that his wife claimed to own). Further, these three firearms were all part of the same course of conduct or common scheme or plan as the offense of conviction, notwithstanding the fact that the jury was inexplicably unable to find beyond a reasonable doubt that Defendant possessed the .22. Even if the court were to accept Defendant's contention that the jury acquitted Defendant of possessing the .22,[3] "[a]cquitted conduct may be used for sentencing purposes if proved by a preponderance of the evidence." *United States v. No Neck*, 472 F.3d 1048, 1055 (8th Cir. 2007).

The court also found by a preponderance of the evidence that, on August 19, 2005, Defendant unlawfully possessed a fourth firearm, the .44, as part of the same common scheme or plan. At such time, Defendant was still a felon and a marijuana user. Although the .44 was discovered approximately seventeen months after the Shotgun, the .45 and the .22, the .44 was discovered under strikingly similar, if not identical, circumstances. For example, the Shotgun and the .44 were both found under Defendant's side of the mattress in the same master bedroom. Like the .45 found loaded under Defendant's pillow, the .44 also was found loaded. Law enforcement officers found extra ammunition, marijuana and drug paraphernalia near the firearms during both searches. Therefore, the court held that the .44 was part of the same course of conduct as the Shotgun, the .45 and the .22. *See* USSG § 1B1.3 cmt. (n.9) (defining "same course of conduct" and stating that, "where the conduct alleged to be relevant is relatively remote to the offense of conviction, a stronger

---

**3.** The court notes that Defendant's contention is somewhat dubious. The Eighth Circuit Court of Appeals recently held that a similarly worded interrogatory did not amount to an acquittal. *See United States v. Mitchell*, 476 F.3d 539, 545 (8th Cir.2007) ("The language of the interrogatory itself is not susceptible to discerning what, specifically, the jury found; we know merely that it was unable to unanimously agree beyond a reasonable doubt....").

showing of similarity or regularity is necessary to compensate for the absence of temporal proximity").

Accordingly, because the court found that Defendant's offense involved four firearms, the court applied a two-level increase, pursuant to USSG § 2K2.1(b)(1)(A).[4]

### B. Possession of a Firearm in Connection with Another Felony Offense—USSG § 2K2.1(b)(5)

The second issue was whether the court should apply a four-level enhancement, pursuant to USSG § 2K2.1(b)(5), because Defendant possessed a firearm in connection with another felony offense.

In relevant part, USSG § 2K2.1(b)(5) provides:

> If the defendant used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense, increase by 4 levels....

USSG § 2K2.1(b)(5) (emphasis in original). In construing this subsection, the Eighth Circuit Court of Appeals stated:

> "In connection with" equates to the "in relation to" language found in 18 U.S.C. § 924(c)(1). *United States v. Regans*, 125 F.3d 685, 686 (8th Cir.1997) (equating § 2K2.1(b)(5)'s reference to "in connection with" to the "in relation to" language of 18 U.S.C. § 924(c)(1)). In *Smith v. United States*, 508 U.S. 223, 238, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993), the Supreme Court held
>
>> [t]he phrase "in relation to" thus, at minimum, clarifies that the firearm must have some purpose or effect with respect to the [other crime]; its presence or involvement cannot be the

result of accident or coincidence.... Instead, the gun at least must "facilitat[e], or ha[ve] the potential of facilitating," the [other crime].

*United States v. Wunder*, 414 F.3d 1019, 1021 (8th Cir.2005); *see also United States v. Gregg*, 467 F.3d 1126, 1130 (8th Cir. 2006) ("Firearms merely present by accident or coincidence are not possessed or used in connection with another felony."). "Felony offense" is defined as "any offense (federal, state, or local) punishable by imprisonment for a term exceeding one year, whether or not a criminal charge was brought, or conviction obtained." *Id.*, cmt. (n.4). However, for purposes of USSG § 2K2.1(b)(5), "another felony offense" does not include "explosives or firearms possession or trafficking offenses." *Id.*, (n.15).

The court found that Defendant possessed the firearms in connection with his illegal marijuana use, in violation of 21 U.S.C. § 844(a). Even though Defendant was not charged with violating § 844(a), there is overwhelming evidence in the record that he repeatedly committed such crime in connection with his possession of the firearms. On March 25, 2004, Defendant was (as he testified at trial) a marijuana user, and marijuana, rolling papers and a baggie were found in plain view on a plate in Defendant's bedroom. Two weeks earlier, law enforcement officers found marijuana stems, marijuana seeds, torn baggie corners and documents addressed to Defendant in a search of Defendant's garbage. On August 19, 2005, a search of Defendant's residence revealed more marijuana and drug paraphernalia. Prior to this second search, law enforcement officers found marijuana stems, marijuana seeds, loose blunt material, a Swisher Cigarello package and documents bearing

---

4.  Even if the .44 were not included, the court would still apply USSG § 2K2.1(b)(1)(A), based upon Defendant's possession of three firearms.

Defendant's name in a search of Defendant's garbage. Further, the mere fact that Defendant possessed firearms is some evidence that he is a drug user or drug dealer; it is well known that firearms, especially sawed-off shotguns, are tools of the drug trade. *United States v. Jordan,* 260 F.3d 930, 933–34 (8th Cir.2001). Defendant's violations of § 844(a) carried a maximum two-year sentence, because he has a prior drug conviction. 21 U.S.C. § 844(a); *see* PSIR at ¶ 52 (reflecting that Defendant was convicted in 1996 for Possession of Marijuana in state court).

Accordingly, the court held that Defendant possessed a firearm in connection with another felony offense and, therefore, a four-level enhancement, pursuant to USSG § 2K2.1(b)(5), was appropriate. *Cf. United States v. Bell,* 310 F.3d 604, 605–06 (8th Cir.2002) (per curiam) (holding § 2K2.1(b)(5) enhancement applied, where drugs and guns were found in the defendant's bedroom).

### C. Obstruction of Justice— USSG § 3C1.1

■ The Sentencing Guidelines provide for a two-level enhancement when the "defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction...." USSG § 3C1.1. "Obstruction of justice includes threatening or intimidating witnesses, committing or suborning perjury, falsifying records, making false statements, escaping from custody, or failing to appear at judicial proceedings." *United States v. Kenyon,* 7 F.3d 783, 786 (8th Cir.1993) (citing USSG § 3C1.1 cmt. (3)); *see also Sitting Bear,* 436 F.3d at 934 (stating that "general denials of guilt that are not made under oath do not support an obstruction enhancement") (citing *United States v. Yankton,* 986 F.2d 1225, 1228 (8th Cir.1993)). " 'In order to base an obstruc-

tion of justice enhancement on a defendant's trial testimony, the district court must find by a preponderance of the evidence that he perjured himself.' " *United States v. Williams,* 486 F.3d 377, 382 (8th Cir.2007) (quoting *United States v. Lewis,* 436 F.3d 939, 945 (8th Cir.2006)); *see also United States v. Denton,* 434 F.3d 1104, 1114 (8th Cir.2006) (holding that "a sentencing enhancement for obstruction of justice may be based on the experienced trial judge's finding that the defendant lied to the jury").

A district court applying the obstruction-of-justice enhancement for perjury must review the evidence and make an independent finding, by a preponderance of the evidence, that the defendant gave "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *United States v. Taylor,* 207 F.3d 452, 454–55 (8th Cir.2000) (quoting *United States v. Dunnigan,* [507 U.S. 87, 94], 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993)). *United States v. Ziesman,* 409 F.3d 941, 956 (8th Cir.2005).

Defendant repeatedly perjured himself during trial, when he gave false testimony concerning material matters with the wilful intent to provide false testimony. Defendant lied when he told the jury that he was not living at the House at the time of the first search. Defendant lied when he told the jury that he never possessed the firearms at issue. Although Defendant admitted he used marijuana, he lied when he told the jury that the marijuana in his bedroom on a plate did not belong to him. The testimony on these points was material, false and wilful.

Particularly galling was Defendant's lie to the jury that the officers conducting the second search did not break down the door to his bedroom, in spite of overwhelming

evidence to the contrary. Not only did Officer Nathan Julifs and Officer Chip Joecken testify that they broke down the door, Government Exhibit 54 shows the broken door and the door with a footprint on it. The court found the officers' testimony credible. The court found the testimony of Defendant to be patently false. *Cf. Williams,* 486 F.3d at 383 (affirming two-level enhancement for obstruction of justice, where the district court explicitly found the defendant's testimony at trial to be incredible and the testimony of law enforcement officers on the same issue to be credible). Again, Defendant's testimony was material, false and wilful. Defendant lied to the jury, in order to hide the truth and to escape punishment for his crimes.

Accordingly, the court held that two-level enhancement for obstruction of justice, pursuant to USSG § 3C1.1., was appropriate.

### D. Acceptance of Responsibility— USSG § 3E1.1

Section 3E1.1 provides that, "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels." USSG § 3E1.1(a) (emphasis in original). Further, the Commentary to § 3E1.1 states:

> In determining whether a defendant qualifies under subsection (a), appropriate considerations include, but are not limited to, the following:
>
> (a) truthfully admitting the conduct comprising the offense(s) of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct). Note that a defendant is not required to volunteer, or affirmatively admit, relevant conduct beyond the offense of conviction in order to obtain a reduction under subsection (a). A defendant may remain silent in respect to relevant conduct beyond the offense of conviction without affecting his ability to obtain a reduction under this subsection. However, a defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility;
>
> (b) voluntary termination or withdrawal from criminal conduct or associations;
>
> (c) voluntary payment of restitution prior to adjudication of guilt;
>
> (d) voluntary surrender to authorities promptly after commission of the offense;
>
> (e) voluntary assistance to authorities in the recovery of the fruits and instrumentalities of the offense;
>
> (f) voluntary resignation from the office or position held during the commission of the offense;
>
> (g) post-offense rehabilitative efforts (e.g., counseling or drug treatment); and
>
> (h) the timeliness of the defendant's conduct in manifesting the acceptance of responsibility.

*Id.,* cmt. (n. 1). "The adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." *Id.,* cmt. (n.2). "Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction." *Id.* "In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial." *Id.*

"An enhancement for obstruction of justice ... 'ordinarily indicates that the defendant has not accepted responsibility for

his criminal conduct.'" *United States v. Perez,* 270 F.3d 737, 739 (8th Cir.2001) (quoting USSG § 3E1.1). "While there may be 'extraordinary cases' in which both adjustments might be appropriate, a case in which a reduction for acceptance of responsibility is warranted in spite of a defendant's obstructive conduct 'would be extremely rare.'" *Id.* (quoting *United States v. Honken,* 184 F.3d 961, 969 (8th Cir.1999)). The court must consider the totality of the circumstances. *Id.*

The court finds that Defendant has not accepted responsibility. Defendant put the government to its burden of proof at trial. He has not truthfully admitted the conduct comprising the offenses of conviction in any respect. He has shown absolutely no remorse whatsoever for his crimes. He repeatedly perjured himself at trial. At the Hearing, Defendant maintained his innocence. Defendant has not taken any actions whatsoever that evidence acceptance of responsibility. Therefore, this is not one of those "rare situation[s]" in which a defendant who puts the government to proof at trial still qualifies for acceptance. *See United States v. Speck,* 992 F.2d 860, 863 (8th Cir.1993) (affirming district court's decision to deny defendant acceptance of responsibility, where the defendant had "taken none of the actions listed in Application Note 1 as evidencing acceptance of responsibility").

Accordingly, the court held that a two-level decrease for acceptance of responsibility did not apply. USSG § 3E1.1.

### E. Conclusion

After all applicable adjustments, the court found that Defendant's total offense level was **32.** The court also found that Defendant was a **Criminal History Category III.** Defendant was scored four criminal history points—three points for a 1991 Failure to Appear Conviction in the Iowa District Court in and for Linn County, *see* USSG § 4A1.1(a), and one point for a 1996 Possession of Marijuana Conviction and a 1996 Carrying a Concealed Weapon Conviction, *see id.* § 4A1.1(c). Defendant was not scored any points for a 1976 Second–Degree Murder Conviction in Tennessee state court,[5] because it was too remote. *See id.* § 4A1.2(e)(3).

Accordingly, the court found that Defendant's advisory Sentencing Guidelines range was **151 to 188 months of imprisonment.** *See* USSG Sentencing Table.

### VI. DISPOSITION

At the Hearing, the court sentenced Defendant in a manner consistent with this Sentencing Memorandum.

**IT IS SO ORDERED.**

---

5. Defendant was originally charged and convicted of First–Degree Murder, but such conviction was reversed, because the judge who presided over Defendant's trial retired more than sixty days before ruling on Defendant's new trial motion. *See White v. State,* 542 S.W.2d 628, 628–29 (Tenn.Crim.App.1976).