# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-2336

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Northern |
| | * | District of Iowa. |
| Thomas John Wunder, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: December 15, 2004
Filed: July 25, 2005

_____

Before BYE, HANSEN, and GRUENDER, Circuit Judges.

_____

BYE, Circuit Judge.

Thomas John Wunder appeals the district court's[1] imposition of a four-level sentencing enhancement for possession of a firearm "in connection with another felony offense" under United States Sentencing Guidelines § 2K2.1(b)(5). We affirm.

_____

[1]The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa.

# I

On April 23, 2003, police went to Melissa Behr's home to arrest Wunder for a probation violation. When they arrived, police discovered Wunder and Kevin Bourland in the garage. Also in the garage, police discovered an unloaded and cased shotgun belonging to Wunder resting near a desk containing several items used in the manufacture of methamphetamine.

Wunder was indicted for possession of a firearm by a drug user in violation of 18 U.S.C. § 922(g)(3). He entered into a plea agreement admitting he was a daily drug user at the time of his arrest and he knowingly possessed the shotgun which he purchased in 2002. Wunder and the government stipulated to a base offense level of twenty-four and a three-level downward adjustment for acceptance of responsibility, resulting in an adjusted offense level of twenty-one. The parties agreed no further upward or downward adjustments were appropriate. The presentence investigation report (PSR), however, recommended a four-level increase for possession of a firearm in connection with another felony offense (manufacture of methamphetamine) under § 2K2.1(b)(5).

Wunder objected to the four-level increase arguing the information in the PSR was incomplete. He confirmed the shotgun was found in the garage near items used in the manufacture of methamphetamine and that he obtained it in 2002 from Robert Wolf. He claimed, however, to have immediately resold the shotgun to Bourland. According to Wunder, Bourland possessed the shotgun until April 22, 2003, when he brought it to Behr's residence, along with several other items, as part of a vehicle trade. Wunder argued the shotgun was unrelated to his use or production of methamphetamine, and its proximity to the drug paraphernalia found in the garage was insufficient to justify the enhancement.

At sentencing, Wunder called Behr to testify about the vehicle trade and the shotgun. Behr testified Wunder made arrangements with Bourland to trade her vehicle for Bourland's vehicle plus some additional items of Bourland's personal property, including the shotgun. Behr testified the trade was to have taken place the day Wunder and Bourland were arrested and she never saw the shotgun before then. Based on Behr's testimony, Wunder argued the enhancement was not factually supported.

The district court rejected Behr's testimony as incredible because she was unable to identify the friends who put the car trade together and could not recite any specifics of the trade, e.g., items to be taken in trade, the relative values of the cars, etc. Further, the court found there was no evidence to indicate Behr had occasion to notice whether the shotgun was in the garage prior to April 23, 2003. Conversely, the court found the uncontested offense conduct set forth in the PSR sufficient to support the enhancement. The report stated Wunder bought the shotgun in 2002, and it was found in the garage next to several items used in the manufacture of methamphetamine. Additionally, Behr told law enforcement Wunder had manufactured methamphetamine five to ten times in her garage, and Wunder admitted using, manufacturing and distributing methamphetamine. The district court also reviewed photographs of the garage showing the shotgun's location next to the desk containing the drug-related items.

Based on this evidence, the district court concluded the shotgun's presence was not the result of a mistake or coincidence but was used to facilitate or had the potential of facilitating the drug trafficking offense. Accordingly, the district court added four-levels to arrive at an adjusted offense level of twenty-five, with a sentencing range of 84 to 105 months. The court denied the government's motion for an upward departure based on understated criminal history and sentenced Wunder to 105 months incarceration.

On appeal, Wunder argues the district court's imposition of the four-level enhancement was factually unsupported and the district court erred when it relied on disputed factual information contained in the PSR. Wunder also argues the sentence violates Blakely v. Washington, 542 U.S. 296 (2004).

II

We review the district court's application of the guidelines de novo and its findings of fact for clear error. United States v. Mathijssen, 406 F.3d 496, 498 (8th Cir. 2005). A district court's finding with respect to a defendant's purpose for possessing a firearm is a fact finding subject to clear error review. United States v. Mack, 343 F.3d 929, 936 (8th Cir. 2003).

Section 2K2.1(b)(5) states "[i]f the defendant used or possessed any firearm or ammunition in connection with another felony offense . . . increase by 4 levels." "In connection with" equates to the "in relation to" language found in 18 U.S.C. § 924(c)(1). United States v. Regans, 125 F.3d 685, 686 (8th Cir. 1997) (equating § 2K2.1(b)(5)'s reference to "in connection with" to the "in relation to" language of 18 U.S.C. § 924(c)(1)). In Smith v. United States, 508 U.S. 223, 238 (1993), the Supreme Court held

> [t]he phrase "in relation to" thus, at minimum, clarifies that the firearm must have some purpose or effect with respect to the drug trafficking crime; its presence or involvement cannot be the result of accident or coincidence . . . . Instead, the gun at least must "facilitat[e], or ha[ve] the potential of facilitating," the drug trafficking offense.

Our cases further hold "[t]he enhancement must be imposed unless it is clearly improbable that [the defendant] possessed the firearm in connection with another felony offense." United States v. Agee, 333 F.3d 864, 866 (8th Cir. 2003) (citing United States v. Linson, 276 F.3d 1017, 1018 (8th Cir. 2002)).

Wunder stipulated he purchased the shotgun in 2002, he knowingly possessed it at the time of his arrest, and it was discovered in his garage in close proximity to several items used in the manufacture of methamphetamine. Wunder also admitted he was a regular user of methamphetamine, had distributed methamphetamine, and had manufactured methamphetamine in the garage. Behr confirmed Wunder had used her garage on five to ten occasions to manufacture methamphetamine. Similarly, the photographs confirmed the shotgun's close proximity to the drug-related items when it was discovered. After reviewing this undisputed evidence, the district court concluded

> What is, I think, of evidentiary value is the offense conduct in the Presentence Report that is – has not been contested by the Defendant. The first is that this weapon was transferred from a felon named Robert Wolf to the Defendant. Defendant was identified in a six-photograph show as the person to whom Wolf sold the gun, and that was in the fall of 2002. It ends up in a garage within reaching distance of where methamphetamine was manufactured a number of times, and in which methamphetamine materials to make methamphetamine were found stored in a drawer. And that happened on April 23rd, 2003.

Sent. Tr. at 27.

Wunder, however, contends the shotgun was present in the garage by coincidence and had no connection to his use, distribution and manufacture of methamphetamine. He contends after buying the shotgun in 2002, he immediately resold it to Bourland and did not see it again until Bourland brought it to the garage as part of the vehicle trade. Wunder argues this explanation creates a factual dispute making the district court's application of the enhancement improper. We disagree.

It is well-established

> Once a defendant objects to the presentence report, the court must either make a finding as to whether the disputed fact exists or state that it will not take the disputed fact into account. *If the sentencing court chooses to make a finding with respect to the disputed facts, it must do so on the basis of evidence, and not the presentence report.*

United States v. Burke, 80 F.3d 314, 316 (8th Cir. 1996) (quoting United States v. Greene, 41 F.3d 383, 386 (8th Cir. 1994)) (emphasis in original).

We conclude, however, the undisputed facts relied on by the district court are sufficient to support the enhancement. Thus, Wunder's claim of error involves whether the district court properly rejected his explanation for the shotgun's presence. Wunder presented Behr's testimony to show the shotgun was in the garage by coincidence but the district court found her testimony incredible.

> The Court finds the witness Melissa Behr to be incredible. She didn't have any idea about this car trade, what the dollar figures were, what was going to happen, what was going to be taken in trade; wouldn't say who the friends were that put the trade together. There's no evidence that she was out in her garage and would have had the occasion to see the gun. I just find her to be a witness that doesn't have much to offer in this case.

Sent. Tr. at 27.

A district court's credibility determinations are virtually unreviewable on appeal. United States v. Martin, 28 F.3d 742, 745-46 (8th Cir. 1994) (citation omitted). In this instance, we find no reason to question the district court's credibility determination. Accordingly, we conclude the district court's imposition of the enhancement was not clearly erroneous.

-6-

## III

Next, Wunder argues the district court violated his Sixth Amendment rights under Blakely, a claim governed by the Supreme Court's decision in United States v. Booker, 125 S. Ct. 738 (2005). Under Booker, we consider whether Wunder's sentence, imposed under a mandatory sentencing scheme, is erroneous. See United States v. Pirani, 406 F.3d 543 (8th Cir. 2005) (en banc). Because Wunder first raised Blakely in proceedings before this court we review his sentence for plain error. Pirani, 406 F.3d at 549.

Plain error review is governed by the four-part test of United States v. Olano, 507 U.S. 725, 732-36 (1993):

> before an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.

Pirani, 406 F.3d at 550 (quoting Johnson v. United States, 520 U.S. 461, 466-67 (1997)).

The first two Olano factors are satisfied here – the district court erred by applying the guidelines as mandatory and the error is plain. Id. As for the third factor, Wunder must show a "reasonable probability that he would have received a more favorable sentence with the Booker error eliminated by making the Guidelines advisory." Id. at 551-52. We have reviewed the record on appeal and conclude there is nothing to indicate a reasonable probability Wunder would have received a more favorable sentence but for the Booker error.

IV

The judgment of the district court is affirmed.

_____