[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 3, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-15709
Non-Argument Calendar

_____

D. C. Docket No. 04-00195-CR-4

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BRANDON DASS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

**(May 3, 2006)**

Before BIRCH, CARNES and PRYOR, Circuit Judges.

PER CURIAM:

Brandon Dass appeals his sentence of 72 months of imprisonment and three

years supervised release following his guilty plea to possession of machine guns, in violation of 18 U.S.C. § 922(o)(1). He argues (1) that the district court clearly erred in enhancing his offense level pursuant to U.S.S.G. § 2K2.1(b)(1)(B) and (b)(4) (2004) based on its finding that he possessed nine qualifying firearms; and (2) that his sentence, which exceeds the advisory Guidelines range by 15 months, is unreasonable based on the evidence in the record. Finding no reversible error, we AFFIRM.

## I. BACKGROUND

Twenty-year old Dass and his father were arrested at Fort Stewart, Georgia, where they were observed on a restricted artillery range. Three firearms, including a Century Arms rifle and RG Industries revolver, and assorted ammunition were discovered in the back of a truck owned by Dass's father. In addition, authorities found a video camera in the truck that contained a tape of Dass's father firing a handgun in numerous restricted areas at Fort Stewart.

After their arrest, an explosion occurred near the residence that they shared. A truck driver for the Savannah Sanitation Department was emptying a commercial dumpster when a large quantity of military explosives detonated. The driver sustained minor injuries when he jumped from the vehicle. The sanitation truck, the dumpster, and nearby structures were damaged. Other explosives that

2

did not detonate were also found in the dumpster. According to a special agent with the Bureau of Alcohol, Tobacco and Firearms ("ATF") and the range manager at Fort Stewart, the explosives found in the dumpster were commonly fired at the restricted training area where Dass and his father were arrested.

After the explosion, ATF agents obtained a search warrant for Dass's residence. They found 18 firearms and 10 types of ammunition in the house. All of the firearms, including a Colt rifle and North Industries rifle, were found in the attic, with the exception of two that were recovered from Dass's bedroom. The explosives seized from the residence were consistent with the explosives seized from the scene of the dumpster. ATF agents later found a high explosive, anti-tank rocket in the crawl space under the house that was accessible from Dass's bedroom. In addition, in Dass's bedroom, they found hand-drawn pictures of weapons and instructions detailing how to convert firearms from semiautomatic to full automatic. ATF agents also found a 30mm HEDP M789 round in a box in the garage. The explosives found in their home were commonly used on the Fort Stewart artillery range.

Authorities interviewed Dass's mother and a classmate. His mother relayed concerns over Dass's mental health and his close relationship with his father. Dass's former classmate and friend reported that Dass converted a semiautomatic

3

assault rifle into a fully automatic rifle and made parts for firearms. The classmate also stated that Dass reported that he and his father had begun to collect ammunition, casings, and hand grenade parts from Fort Stewart.

Brandon Dass later pled guilty to possession of a machine gun, in violation of 18 U.S.C. § 922(o)(1). When Dass was interviewed by a probation officer, he admitted that he and his father possessed firearms in the attic of their house and that some of the weapons were assault weapons. He also acknowledged that he knew that the firearms should be registered. He stated that most of the firearms were purchased from flea markets and garage sales and admitted that he purchased an 84mm rocket, anti-personnel rounds, and grenades. In addition, he admitted that he placed explosives in the dumpster. Dass's father, age 49, is disabled and is currently incarcerated. Until his arrest, Dass lived with his father from 1993.

The Probation Office prepared a Pre-Sentence Investigation Report ("PSI") and set Dass's base offense level at 18, pursuant to U.S.S.G. § 2K2.1, which calls for a base offense level of 18 if the offense involved firearms described in 26 U.S.C. § 5845(a) or 18 U.S.C. § 921(a)(30). The Probation Office then increased the offense level four levels because the offense involved nine qualifying weapons, which included four illegal explosives, pursuant to U.S.S.G. § 2K2.1(b)(1)(B); two levels because the offense involved destructive devices, pursuant to U.S.S.G.

4

§ 2K2.1(b)(3)(B), and two levels because the offense involved a firearm with an obliterated serial number, pursuant to U.S.S.G. § 2K2.1(b)(4). Dass was granted a three-level reduction for his acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a)-(b). The Probation Office also noted that an aggravating circumstance (the explosives placed in the dumpster) might warrant an upward departure pursuant to U.S.S.G. § 5K2.6.[1] With a total offense level of 23 and a criminal history category of I, the Probation Office calculated Dass's advisory Guidelines range to be 46 to 57 months of imprisonment and two to three years of supervised release.

After receiving the PSI, Dass filed a motion to withdraw his guilty plea, which the court denied. In Dass's objections to the PSI, he objected to being held responsible for five of the qualifying weapons, which included an illegal explosive, for the purpose of increasing his offense level pursuant to U.S.S.G. § 2K2.1(b)(1)(B) and (b)(4).[2] Specifically, Dass argued that he did not possess the following: (1) Century Arms, Incorporated, Model C15 Sporter, .223 caliber rifle; (2) RG Industries, Model RG23, .22 LR caliber revolver with obliterated serial

_____

[1]According to U.S.S.G. § 5K2.6, "If a weapon or dangerous instrumentality was used or possessed in the commission of the offense the court may increase the sentence above the authorized guideline range."

[2]Dass made other objections to the PSI that are not relevant to this appeal and were not raised in his brief.

5

number; (3) Colt, Model Match Target, .223 caliber semiautomatic rifle; (4) North China Industries, Model MAK-90 short-barrel semiautomatic rifle; and (5) 30mm HEDP M789 anti-material and anti-personnel round. Dass also objected to the PSI's suggestion that an upward departure pursuant to U.S.S.G. § 5K2.6 might be warranted.

At his sentencing hearing, Dass renewed his objections. The district court overruled Dass's objections and found that Dass had constructive and joint possession of the above-referenced firearms and the 30mm HEDP M789 round. Before imposing a sentence, the district court heard victim impact statements from the garbage truck driver, who was injured in the explosion, and the vehicle maintenance director for the city of Savannah. The garbage truck driver testified that he sought counseling and experienced nightmares after the explosion. The vehicle maintenance director testified that the damage to the garbage truck from the explosion totaled $58,000. At the conclusion of the sentencing hearing, Dass's attorney asked the court to consider Dass's devotion to his father and his father's negative influence over him. Dass also addressed the court, admitted that he had made a mistake, and stated that he did not pursue his education because he had to care for his father.

The district court sentenced Dass to 72 months of imprisonment and three

years of supervised release.  The court explained it sentenced Dass above the

Guidelines range because it perceived that Dass would likely reoffend since "[a]

sense of value and a sense of duty to others has not been instilled."  R4 at 47.  The

court noted that placing explosives in a public dumpster was a calculated act done

without regard for the consequences, which resulted in harm to the truck driver and

the city of Savannah.  While the court acknowledged that the advisory Guidelines

are an important consideration in every case, it found that Dass's case warranted a

higher sentence.  The court did not address the PSI's upward departure suggestion

pursuant to U.S.S.G. § 5K2.6.  At the conclusion of the sentencing hearing, Dass

renewed his previous objections.

## II.  DISCUSSION

A.  Standard of Review

The district court is obligated to consult and correctly calculate the

Guidelines even though United States v. Booker, 543 U.S. 220, 125 S. Ct. 738

(2005), rendered the Guidelines advisory.  United States v. Crawford, 407 F.3d

1174, 1178 (11th Cir. 2005).  Booker does not alter our previously established

standards of review of the district court's implementation of the Guidelines.

United States v. Ellis, 419 F.3d 1189, 1192 (11th Cir. 2005).  We review a

sentencing court's factual findings for clear error and review de novo that court's

application of the sentencing Guidelines to the facts.  United States v. Jackson, 276 F.3d 1231, 1233 (11th Cir. 2001).  "When a defendant objects to a factual finding that is to be used as a basis for sentencing, the government bears the burden to establish the disputed fact by a preponderance of the evidence."  United States v. Agis-Meza, 99 F.3d 1052, 1055 (11th Cir. 1996).

B.  Possession of Firearms and Explosive

Dass argues that there was insufficient evidence to prove that five of the illegal firearms were in his possession and that the district court thereby erred in applying the enhancements under  U.S.S.G. § 2K2.1(b)(1)(B) and (b)(4).  First, he contends that he did not possess the two eligible firearms found in his father's truck, which included the revolver with the obliterated serial number, because he was merely a passenger.  Second, he contends that he did not possess the two other illegal firearms found in the attic of his residence because he did not occupy that room.  Third, he argues that there is no evidence that he possessed the 30mm HEDP M789 round, an illegal explosive device, found in the garage of his residence.

The Guidelines provide for a four-level increase if the offense involved between 8 and 24 qualifying firearms.  U.S.S.G. § 2K2.1(b)(1)(B).  For purposes of calculating the number of firearms in this section, the court can only count those

8

firearms that were "unlawfully sought to be obtained, unlawfully possessed, or unlawfully distributed." Id. § 2K2.1(b)(1)(B) cmt. n.6. The Guidelines also provide for a two-level increase if the firearm was stolen or had an obliterated serial number. Id. § 2K2.1(b)(4).

"Possession may be actual or constructive, joint or sole." United States v. Gunn, 369 F.3d 1229, 1234 (11th Cir.) (per curiam) (considering sufficiency of the evidence regarding an 18 U.S.C. § 924(c) conviction), cert. denied sub nom., 543 U.S. 937, 125 S. Ct. 324 (2004). For actual possession, the defendant must have "physical possession of or personal dominion over the thing allegedly possessed." United States v. Leonard, 138 F.3d 906, 909 (11th Cir. 1998). For constructive possession, the defendant must have "ownership, dominion, or control over an object itself or dominion or control over the premises or vehicle in which the object is concealed." Id.

Dass primarily relies on Leonard and United States v. Pedro, 999 F.2d 497 (11th Cir. 1993), to support his argument that he did not have actual or constructive possession of the disputed firearms and destructive device. In Leonard, the defendant at issue was a passenger in the backseat of a station wagon. 138 F.3d at 909. After the police searched the vehicle, they discovered cocaine and a firearm hidden in the tailgate. We reversed that defendant's conviction

because "[t]he record only show[ed] that [the defendant] was a passenger in the back seat of the station wagon when it was stopped" and therefore "there [was] no evidence to indicate that [the defendant] ever had ownership, dominion or control over the cocaine, the gun, or the vehicle in which they were concealed." Id.

In Pedro, two defendants were arrested in connection with a burglary of an apartment. 999 F.2d at 498. When they were arrested outside the apartment, one of the defendants had a suitcase which contained a firearm that was stolen during the burglary. Id. at 498-99. The other defendant was subsequently convicted of possession of a firearm by a convicted felon based on the firearm in the suitcase. We reversed the latter's conviction because "the record [was] devoid of any evidence of [the defendant's] knowledge of the firearm." Id. at 502. We reasoned that even "[a]ccepting the Government's argument that [the two defendants] were engaged in joint burglary, it would be highly unlikely that both of the men would scour each room side-by-side, aware of what the other was picking up." Id.

Whether Dass possessed these firearms is a factual finding that we review for clear error. See Jackson, 276 F.3d at 1233. Here, there is no clear error. Dass's reliance on Leonard and Pedro is misplaced because there is sufficient evidence that, although Dass did not own the vehicle and residence where the disputed firearms were seized, he had knowledge of the firearms and exercised

10

control over those areas.  See Leonard, 138 F.3d at 909.  Specifically, Dass admitted to the probation officer that he and his disabled father possessed various firearms in the attic of their residence.  He also admitted that he placed explosives in the dumpster, which were similar to the 30mm round found in the garage.  These admissions, coupled with the fact that both he and his father were avid gun collectors, are sufficient evidence that Dass exercised control over all the firearms in the house.  See United States v. Harris, 20 F.3d 445, 454 (11th Cir. 1994) (concluding that defendant's "unrestricted access to the home" allowed the jury to infer that "he exercised control over the house and therefore maintained constructive possession of the [illegal item] found at the house").  Rather than being a "mere passenger" in his father's truck, the record also supports that Dass and his father frequented Fort Stewart in the truck to scavenge ordnance and to fire weapons.  Therefore, in light of the undisputed illegal firearms that were found in his room, the accessibility of the disputed firearms in the residence and truck, Dass's close relationship with his father, the history of their firearm collecting and joint activities in Fort Stewart, and his admissions that he owned firearms in the attic and disposed of similar explosives in the dumpster, the district court did not commit clear error when it determined that Dass had at least constructive possession of the disputed weapons and enhanced Dass's offense level pursuant to

11

U.S.S.G. § 2K2.1(b)(1)(B) and (b)(4).

B.  Sentence Exceeding the Advisory Guidelines Range

Dass also argues that his 72-month sentence, which exceeds the advisory Guidelines by 15 months, is unreasonable because (1) there is nothing to support the district court's finding that he will likely commit more crimes and (2) he has no prior criminal history.

The district court must correctly calculate the sentencing range prescribed by the Sentencing Guidelines.  Crawford, 407 F.3d at 1178-79.  Once the district court has accurately calculated the Guidelines range, it "may impose a more severe or more lenient sentence" that we review for reasonableness.  Id. at 1179.  In crafting a reasonable sentence, the district court must consider the following:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwanted sentencing disparities; and (10) the need to provide restitution to victims.

United States v. Talley, 431 F.3d 784, 786 (11th Cir. 2005) (holding that the district court's imposition of a sentence and this Court's reasonableness inquiry are guided by the factors outlined in 18 U.S.C. § 3553(a)); see also 18 U.S.C.

12

§ 3553(a). A district court need not explain every § 3553(a) factor before announcing its sentence. Talley, 431 F.3d at 786. "[A]n acknowledgment by the district court that it has considered the defendant's arguments and the factors in section 3553(a) is sufficient under Booker." Id.

Here, the record reveals that the district court adequately and properly considered the § 3553(a) sentencing factors, including the nature and circumstances of the offense, the need for the sentence imposed to reflect the seriousness of the offense, the need to protect the public, and the history and characteristics of the defendant. Further, the court correctly noted that while the advisory Guidelines are an important consideration, they did not address all of the court's concerns, including the grave risk to which Dass exposed the public by disposing of explosives in a commercial dumpster. Notwithstanding Dass's lack of a prior criminal history, we agree with the district court's observation that there were "serious and peculiarly dangerous events that occurred here." R4 at 47.

### III. CONCLUSION

Because of the evidence of Dass's control over areas where the disputed firearms were seized, we conclude that the district court did not err in increasing Dass's offense level under the advisory Guidelines pursuant to U.S.S.G. § 2K2.1(b)(1)(B) and (b)(4). We also conclude that Dass's sentence, which exceeds

13

the sentencing range of the advisory Guidelines, is reasonable.   **AFFIRMED.**