**UNITED STATES of America,
Plaintiff,**

v.

**Linda Darcell GILBERT, Defendant.**

**No. 06–CR–106–1–LRR.**

United States District Court,
N.D. Iowa,
Cedar Rapids Division.

July 24, 2007.

Charles J. Williams, U.S. Attorney's Office, Cedar Rapids, IA, for Plaintiff.

## SENTENCING MEMORANDUM

READE, Chief Judge.

### TABLE OF CONTENTS

I. INTRODUCTION .............................................1002

II. RELEVANT PROCEDURAL BACKGROUND ............................1002

III. THREE-STEP PROCESS .......................................1003

IV. THE ISSUES ...............................................1003

V. ADVISORY SENTENCING GUIDELINES RANGE ......................1004
 A. Possession of Three or More Firearms—USSG § 2K2.1(b)(1)(A) ...........1004
 B. Possession of a Destructive Device—USSG § 2K2.1(b)(3)(B) ..............1006
 C. Possession of a Stolen Firearm—USSG § 2K2.1(b)(4) ...................1007
 D. Possession of a Firearm in Connection with Another Felony Offense—
 USSG § 2K2.1(b)(5) .................................................1007
 1. 21 U.S.C. § 856: General principles ...............................1007
 2. 21 U.S.C. § 856(a)(1): Defendant's purpose .......................1008
 3. 21 U.S.C. § 856(a)(2): Family members' purposes ..................1010
 4. Conclusion ........................................................1011

VI. DISPOSITION ..............................................1011

## I. INTRODUCTION

The matter before the court is the sentencing of Defendant Linda Darcell Gilbert.

## II. RELEVANT PROCEDURAL BACKGROUND

On August 15, 2006, Defendant was charged with her husband, Robert Earl Cole ("Robert Cole"), and her son, Paul Matthew Gilbert ("Paul Gilbert"), in a five-count Indictment. Defendant was only charged in Count 1 of the Indictment.

Count 1 charged that, on about March 25, 2004, Defendant and Robert Cole possessed a firearm, that is, a weapon made from an Iver Johnson Champion model 12 gauge shotgun, no serial number, which had a barrel of less than 18 inches in length and an overall length of less than 26 inches, not registered to either of them with the National Firearms Registration and Transfer Record ("the Shotgun"). The government alleged that Defendant possessed the Shotgun in violation of 26 U.S.C. §§ 5841, 5861(d) and 5871.

On October 19, 2006, a unanimous federal jury found, beyond a reasonable doubt, Defendant guilty of Count 1.[1]

On June 5, 2007, the United States Probation Office filed a Presentence Investigation Report ("PSIR"). On June 12, 2007, the government and Defendant filed their respective sentencing memoranda.

On June 20 and July 24, 2007, the court held a sentencing hearing ("Hearing").[2] Assistant United States Attorney Stephanie M. Rose represented the government. Attorney Dennis E. McElvie represented Defendant, who was personally present.

---

1. The jury also convicted Robert Cole of Count 1, Count 2 and Count 4. It acquitted Paul Gilbert of Count 3 and Count 5.

2. On June 20, 2007, the court continued the Hearing after Defendant told the undersigned that she had to vomit.

At the Hearing, the court pronounced sentence in a manner consistent with the instant Sentencing Memorandum. The instant Sentencing Memorandum is designed to provide a more detailed understanding of the court's reasoning on some of the legal issues in the case. It is not comprehensive and should be read in conjunction with the record the court made at the Hearing.[3]

## III. THREE–STEP PROCESS

The Sentencing Guidelines are no longer mandatory. *United States v. Haack*, 403 F.3d 997, 1002 (8th Cir.) (discussing *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005)), *cert. denied*, 546 U.S. 913, 126 S.Ct. 276, 163 L.Ed.2d 246 (2005). They are advisory. *Id.* The Eighth Circuit Court of Appeals has explained that, in the post-*Booker* world, "there are essentially three steps to determining an appropriate sentence." *United States v. Sitting Bear*, 436 F.3d 929, 934 (8th Cir.2006).

First, the district court should determine the applicable Sentencing Guidelines range without consideration of any [Sentencing] Guidelines departure factors, because the [Sentencing] Guidelines remain an important sentencing factor. *See* 18 U.S.C. § 3553(a)(4). Second, the district court, where appropriate, should consider the departure provisions contained in Chapter 5, Part K and/or § 4A1.3 of the [Sentencing] Guidelines, as those sentencing provisions have not been excised by *Booker*. The resulting range is the post-*Booker* advisory [Sentencing] Guidelines range. Third, the district court should consider the rest of the § 3553(a) factors in determining whether to impose the "Guidelines sentence" as determined in the prior steps or a "non-Guidelines sentence" driven by the other § 3553(a) considerations, and sentence the defendant accordingly. *Haack*, 403 F.3d at 1003; *see also United States v. Denton*, 434 F.3d 1104, 1114 (8th Cir.2006) (reviewing the sentence imposed by the district court under the three-part *Haack* methodology).

*Id.* at 934–35. At the Hearing, the court adhered to this three-step process. The so-called presumption of reasonableness that attends to the advisory Sentencing Guidelines range in the Eighth Circuit Court of Appeals played no part in the court's analysis. *See Rita v. United States*, —— U.S. ——, 127 S.Ct. 2456, 2465, 168 L.Ed.2d 203 (2007) ("[T]he presumption applies only on appellate review.").

## IV. THE ISSUES

At the Hearing, the parties litigated a number of issues, including but not limited to: whether the court should apply (1) a two-level enhancement, pursuant to USSG § 2K2.1(b)(1)(A) (2004),[4] because Defen-

---

**3.** The Supreme Court recently stated:

The appropriateness of brevity or length, conciseness or detail, when to write, what to say, depends upon the circumstances. Sometimes a judicial opinion responds to every argument; sometimes it does not; sometimes a judge simply writes the word "granted" or "denied" on the face of a motion while relying upon context and the parties' prior arguments to make the reasons clear. The law leaves much, in this respect, to the judge's own professional judgment.

*Rita v. United States*, —— U.S. ——, 127 S.Ct. 2456, 2463, 168 L.Ed.2d 203 (2007). What is

important is that "[t]he sentencing judge ... set forth enough to satisfy the appellate court that [she] has considered the parties' arguments and has a reasoned basis for exercising [her] own legal decisionmaking authority." *Id.* (citing *United States v. Taylor*, 487 U.S. 326, 336–37, 108 S.Ct. 2413, 101 L.Ed.2d 297 (1988)). Less explanation is necessary where, as here, the court sentenced within the advisory Sentencing Guidelines range. *Id.*

**4.** The parties agree that the 2004 edition of the Sentencing Guidelines manual applies. *See* PSIR at ¶¶ 31–32.

dant possessed three or more firearms; (2) a two-level enhancement, pursuant to USSG § 2K2.1(b)(3)(B), because Defendant possessed a destructive device; (3) a two-level enhancement, pursuant to USSG § 2K2.1(b)(4), because Defendant possessed a stolen firearm; and (4) a four-level enhancement, pursuant to USSG § 2K2.1(b)(5), because Defendant possessed a firearm in connection with another felony offense.

At the Hearing, the court resolved these four issues, as well as others not discussed herein. To the extent necessary, the court made factual findings under a preponderance-of-the-evidence standard. *See United States v. Bah,* 439 F.3d 423, 426 n. 1 (8th Cir.2006) ("[J]udicial fact-finding using a preponderance[-]of[-]the[-]evidence standard is permitted provided that the [Sentencing Guidelines] are applied in an advisory manner."). The government bore the burden of proof on all four issues. *See United States v. Flores,* 362 F.3d 1030, 1037 (8th Cir.2004) (stating that the government bears the burden to prove sentencing enhancements).

## V. ADVISORY SENTENCING GUIDELINES RANGE

### A. Possession of Three or More Firearms—USSG § 2K2.1(b)(1)(A)

■ In relevant part, USSG § 2K2.1(b)(1)(A) provides for a two-level increase to a defendant's base offense level, "if the offense involved" between three and seven firearms. USSG § 2K2.1(b)(1)(A). Further, the Commentary explains:

For purposes of calculating the number of firearms under subsection (b)(1), count only those firearms that were unlawfully sought to be obtained, unlawfully possessed, or unlawfully distributed, including any firearm that a defendant obtained or attempted to obtain by mak-

ing a false statement to a licensed dealer.

*Id.,* cmt. (n. 6). " 'Possession may be actual or constructive, joint or sole.' " *United States v. Dass,* 178 Fed.Appx. 992, 996 (11th Cir.2006) (quoting *United States v. Gunn,* 369 F.3d 1229, 1234 (11th Cir. 2004)); *cf. United States v. Meads,* 479 F.3d 598, 600–01 (8th Cir.2007) (reaffirming standard jury instruction regarding possession), *petition for cert. filed,* —— U.S.L.W. —— (2007); *United States v. Balanga,* 109 F.3d 1299, 1302 (8th Cir. 1997) (affirming conviction under 18 U.S.C. § 922(g)(1) on theory of constructive possession). In determining how many firearms were involved in the offense, the court may generally consider offense conduct and relevant conduct. USSG § 1B1.3; *see, e.g., United States v. Birk,* 453 F.3d 893, 899 (7th Cir.2006).

At the Hearing, the court found by a preponderance of the evidence that, when law enforcement officers raided a three-level residence at 373 Eighteenth Street SE, Cedar Rapids, Iowa ("the House"), on March 25, 2004, Defendant unlawfully possessed three firearms: (1) the Shotgun, (2) a Federal Ordnance, .45 caliber pistol, Government Model, Serial Number F8902557 ("the .45") and (3) a Smith & Wesson, .22 caliber pistol, Model 422, Serial Number TBL7761 ("the .22"). The House was Defendant's residence, and law enforcement officers found all three firearms in the House's second-level master bedroom. They found the Shotgun under Defendant's bed, the .45 under a pillow on the bed and the .22 near the bed in an armoire. All three firearms were found in areas over which Defendant had, at the very least, common control and authority. *See United States v. Wells,* 469 F.3d 716, 721 (8th Cir.2006) (holding that the district court did not clearly err in applying a USSG § 2K2.1(b)(1) enhancement, where the defendant knew about and had control

over firearms in a house); *cf. United States v. Boykin*, 986 F.2d 270, 274 (8th Cir.1993) (holding that there was sufficient evidence to find that a defendant used a firearm in connection with a drug trafficking crime, in violation of 18 U.S.C. § 924(c), where the law enforcement officers found firearms in various places in a bedroom that the defendant shared with his wife).[5]

It is of no moment that Defendant was not charged with or convicted of possessing the .22 and the .45. *Cf. United States v. No Neck*, 472 F.3d 1048, 1055 (8th Cir. 2007) (stating that "[a]cquitted conduct may be used for sentencing purposes if proved by a preponderance of the evidence"); *United States v. Dennis*, 926 F.2d 768, 769 (8th Cir.1991) (per curiam) (holding that the district court did not clearly err when it increased the defendant's offense level for distributing six firearms, pursuant to USSG § 2K2.1(b)(1)(B), even though the defendant was only convicted of possessing one firearm). Defendant's possession of the .45 and the .22 is relevant to her possession of the Shotgun. USSG § 1B1.3; *see, e.g., Birk*, 453 F.3d at 899. "When a court determines the number of firearms involved in an offense under USSG § 2K2.1(b)(1), it looks to the relevant conduct section of the guidelines (USSG § 1B1.3(a)(2)) to determine how many firearms come within the same course of conduct or perhaps a common scheme or plan." *United States v. Santoro*, 159 F.3d 318, 321 (7th Cir.1998) (formatting altered and citations omitted). Here, Defendant's possession of the .45 and the .22 is clearly relevant to her possession of the Shotgun.

Defendant possessed all three firearms in the same course of conduct; Defendant possessed all three firearms at the same time and at the same location, namely, in or around her master bedroom. All three firearms were either loaded or readily loadable, given the ammunition strewn throughout the bedroom. *Cf. United States v. Powell*, 50 F.3d 94, 104 (1st Cir. 1995) (discussing USSG § 2K2.1(b)(1) in the context of a felon-in-possession prosecution and remarking that "contemporaneous, or nearly contemporaneous, possession of uncharged firearms is ... relevant conduct....").

Citing *United States v. Campbell*, 372 F.3d 1179, 1182 (10th Cir.2004), Defendant argues that the two-level enhancement is not appropriate, because her possession of the .45 and the .22 was not unlawful. It is true that, under the circumstances presented here, the court may only count those firearms that were possessed unlawfully. The Commentary to the advisory Sentencing Guidelines states:

> For purposes of calculating the number of firearms under subsection (b)(1), count only those firearms that were unlawfully sought to be obtained, unlawfully possessed, or unlawfully distributed, including any firearm that a defendant obtained or attempted to obtain by making a false statement to a licensed dealer.

USSG § 2K2.1, cmt. (n. 6). In this case, however, Defendant's possession of the Shotgun, the .45 and the .22 was unlawful, because she is a convicted felon. In 1992, Defendant was convicted in the Iowa District Court in and for Linn County for Fraudulent Practice in the First Degree and received a ten-year suspended sen-

---

**5.** In a post-*Miranda* videotaped interview, Defendant admitted that she owned all of the firearms. Although there is intuitive force in the government's argument that Defendant's admission of ownership makes it more likely that she possessed the three weapons, the Eighth Circuit Court of Appeals has stated that "ownership is irrelevant to the issue of possession." *United States v. Boykin*, 986 F.2d 270, 274 (8th Cir.1993) (discussing 18 U.S.C. § 924(c)).

tence. Defendant was, therefore, prohibited under federal law from possessing firearms that had been transported in interstate commerce. *See* 18 U.S.C. § 922(g)(1). Because all three firearms traveled in interstate commerce, Defendant's possession of such firearms was unlawful under federal law.

In any event, Defendant was also prohibited from possessing the three firearms under state law. In Iowa, it is illegal for any person "who is convicted of a felony in state or federal court" to possess a firearm. Iowa Code § 724.26 (2003). For purposes of Iowa Code section 724.26, a "felony" includes "any offense punishable in the jurisdiction where it occurred by imprisonment for a term exceeding one year, but does not include any offense, other than an offense involving a firearm or explosive, classified as a misdemeanor under the laws of the state and punishable by a term of imprisonment of two years or less." *Id.* § 724.25. First-degree fraudulent practice is unquestionably a "felony" for purposes of Iowa Code sections 724.25–.26. *See* Iowa Code 714.9 ("Fraudulent practice in the first degree is a class 'C' felony."); *id.* § 902.9 (stating that the maximum sentence for a class "C" felony is "no more than ten years"); *cf. State v. Buchanan,* 604 N.W.2d 667, 668–69 (Iowa 2000) (holding that a defendant's conviction for interference with official acts while armed qualified as a predicate felony for purposes of Iowa Code section 724.26).

Accordingly, the court found that Defendant's offense involved three firearms and, therefore, applied a two-level increase, pursuant to USSG § 2K2.1(b)(1)(A).

### B. Possession of a Destructive Device—USSG § 2K2.1(b)(3)(B)

 In relevant part, USSG § 2K2.1(b)(3)(B) provides for a two-level enhancement if Defendant possessed a "destructive device." The Commentary to the advisory Sentencing Guidelines defines "destructive device" as having "the meaning given that term in 26 U.S.C. § 5845(f)." Section 5845(f), in turn, includes:

> [A]ny type of weapon by whatever name known which will, or which may be readily converted to, expel a projectile by the action of an explosive or other propellant, the barrel or barrels of which have a bore of more than one-half inch in diameter, except a shotgun or shotgun shell which the Secretary finds is generally recognized as particularly suitable for sporting purposes[.]

26 U.S.C. § 5845(f)(2). At the Hearing, a law enforcement officer testified that the diameter of the bore of the Shotgun was .72 inches and could expel a projectile by the action of an explosive or other propellant. Assuming for the sake of argument that the Shotgun is a "shotgun" within the meaning of the sporting-purposes exception to § 5845(f),[6] such exception would still not apply, because the barrel of the Shotgun was sawed off and thus not particularly suitable for sporting purposes. *See, e.g., United States v. Hardy,* 393 F.3d 747, 748–49 (8th Cir.2004) (holding that a sawed-off shotgun was a destructive device).

Accordingly, the court held that the Shotgun was a destructive device and,

---

**6.** A "shotgun" is defined as:

[A] weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a fixed shotgun shell to fire through a smooth bore either a number of projectiles (ball shot) or a single projectile for each pull of the trigger, and shall include any such weapon which may be readily restored to fire a fixed shotgun shell. 26 U.S.C. § 5845(d). At the Hearing, the law enforcement officer testified that the Shotgun was not intended to be fired from the shoulder.

therefore, applied a two-level enhancement, pursuant to USSG § 2K2.1(b)(3)(B).

### C. Possession of a Stolen Firearm— USSG § 2K2.1(b)(4)

Section 2K2.1(b)(4) provides for a two-level increase "[i]f any firearm was stolen, or had an altered or obliterated serial number." USSG § 2K2.1(b)(4). At the Hearing, it was not disputed that the .45 was stolen. Indeed, Defendant admitted that she obtained the .45 "on the street" and law enforcement officers later determined that the .45 had been reported stolen. Accordingly, the court found that Defendant possessed a stolen firearm, *see supra* Part V.A (discussing Defendant's possession of the .45 as relevant conduct), and held that a two-level enhancement pursuant to USSG § 2K2.1(b)(4) was appropriate.[7]

### D. Possession of a Firearm in Connection with Another Felony Offense—USSG § 2K2.1(b)(5)

In relevant part, USSG § 2K2.1(b)(5) provides:

If the defendant used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense, increase by 4 levels....

USSG § 2K2.1(b)(5) (emphasis in original). In construing this subsection, the Eighth Circuit Court of Appeals stated:

"In connection with" equates to the "in relation to" language found in 18 U.S.C. § 924(c)(1). *United States v. Regans*, 125 F.3d 685, 686 (8th Cir.1997) (equating § 2K2.1(b)(5)'s reference to "in connection with" to the "in relation to" language of 18 U.S.C. § 924(c)(1)). In *Smith v. United States*, 508 U.S. 223, 238, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993), the Supreme Court held

[t]he phrase "in relation to" thus, at minimum, clarifies that the firearm must have some purpose or effect with respect to the [other crime]; its presence or involvement cannot be the result of accident or coincidence.... Instead, the gun at least must "facilitat[e], or ha[ve] the potential of facilitating," the [other crime].

*United States v. Wunder*, 414 F.3d 1019, 1021 (8th Cir.2005); *see also United States v. Gregg*, 467 F.3d 1126, 1130 (8th Cir. 2006) ("Firearms merely present by accident or coincidence are not possessed or used in connection with another felony."). "Felony offense" is defined as "any offense (federal, state, or local) punishable by imprisonment for a term exceeding one year, whether or not a criminal charge was brought, or conviction obtained." *Id.*, cmt. (n. 4). However, for purposes of USSG § 2K2.1(b)(5), "another felony offense" does not include "explosives or firearms possession or trafficking offenses." *Id.*, (n. 15).

■ At the Hearing, the government argued that Defendant possessed the Shotgun, the .45 and the .22 in connection with her maintenance of a drug-involved premises, in violation of 21 U.S.C. § 856. Defendant denied the same.

### 1. 21 U.S.C. § 856: General principles

Section 856 is "the so-called 'crackhouse statute.'" *United States v. Verners*, 53 F.3d 291, 295 (10th Cir.1995).[8] Section 856(a) makes it a crime to:

---

7. The court did not decide whether the Shotgun or another shotgun found at the House on August 19, 2005 had an altered or obliterated serial number.

8. The court was unable to find many Eighth Circuit Court of Appeals cases that analyze § 856 in depth. Therefore, the court primarily relied upon decisions from other circuit courts of appeals. However, the court's discussion of § 856 is consistent with the relevant Eighth Circuit Model Criminal Jury Instructions. *See* Eighth Circuit Model

(1) knowingly open, lease, rent, use, or maintain any place, whether permanently or temporarily, for the purpose of manufacturing, distributing, or using any controlled substance;

(2) manage or control any place, whether permanently or temporarily, either as an owner, lessee, agent, employee, occupant, or mortgagee, and knowingly and intentionally rent, lease, profit from, or make available for use, with or without compensation, the place for the purpose of unlawfully manufacturing, storing, distributing, or using a controlled substance.

21 U.S.C. § 856(a). Violations of § 856(a) are punishable by "a term of imprisonment of not more than 20 years...." *Id.* § 856(c). Accordingly, if Defendant violated § 856(a), then she committed "another felony offense" for purposes of USSG § 2K2.1(b)(5).

The government does not specify whether it alleges that Defendant violated § 856(a)(1), § 856(a)(2) or both subsections of the statute. There is an important difference between the two subsections: whereas § 856(a)(1) is directed at those who actually open or maintain a place for the purpose of drug activity, § 856(a)(2) is directed at "those who knowingly allow others to use their property to run drug operations." *Verners*, 53 F.3d at 297 n. 4; *United States v. Chen*, 913 F.2d 183, 190 (5th Cir.1990) (same). In other words, "[§ 856](a)(1) was intended to apply to deliberate maintenance of a place for a proscribed purpose, whereas [§ 856](a)(2) was intended to prohibit an owner from providing a place for illegal conduct, and yet to escape liability on the basis either of lack of illegal purpose, or of deliberate ignorance." *United States v. Tamez*, 941 F.2d 770, 774 (9th Cir.1991).

Criminal Jury Instructions 6.21.856A (2006 ed.) (model jury instruction for 21 U.S.C.

When analyzing § 856(a)(1) and § 856(a)(2), the court must pay particular attention to the "for the purpose of" language in each subsection. As stated by the Seventh Circuit Court of Appeals:

The phrase "for the purpose of" appears in both subsection (a)(1) and (a)(2), but it has a different meaning in each. Under (a)(1), the "purpose" is that of the defendant; it is not enough to open or maintain a place that is used by others for proscribed purposes, the defendant must maintain the place for his own goal of manufacturing, distributing or using drugs. In (a)(2) the "purpose" may be that of others; the defendant is liable if he manages or controls a building that others use for an illicit purpose, and he either knows of the illegal activity or remains deliberately ignorant of it.

*United States v. Banks*, 987 F.2d 463, 466 (7th Cir.1993) (citations omitted).

### 2. 21 U.S.C. § 856(a)(1): Defendant's purpose

As applied to the government's theory of the case, the elements of section (a)(1) are: Defendant "(1) knowingly, (2) operated or maintained a place, (3) for the purpose of manufacturing, distributing or using any controlled substance." *United States v. Clavis*, 956 F.2d 1079, 1090 (11th Cir.1992); *accord Banks*, 987 F.2d at 466; Eighth Circuit Model Criminal Jury Instructions ("Model Instructions") 6.21.856A (2006 ed.). "The offense requires two mental elements, knowledge and purpose." *Clavis*, 956 F.2d at 1090.

"The purpose element applies to the person who is charged with maintaining the place for the illegal activity." *Id.* It "is not sufficient that others possess the requisite purpose." *Id.*

§ 856(a)(1)); *see id.* 6.21.856B (model jury instruction for 21 U.S.C. § 856(a)(2)).

The specific purpose of manufacturing, distributing or using any controlled substances does not have to be Defendant's sole purpose in operating or maintaining the House. *United States v. Roberts,* 913 F.2d 211, 220 (5th Cir.1990); *see also Verners,* 53 F.3d at 296 (following *Roberts*). The plain language of § 856(a)(1) does not warrant such a construction, which "would eviscerate the statute." *Roberts,* 913 F.2d at 220. Although it is unclear whether the specific purpose of manufacturing, distributing or using any controlled substance needs to be a defendant's primary or principal purpose in operating or maintaining the place in question,[9] such specific purpose clearly must be something more than a purpose incidental thereto. *United States v. Lancaster,* 968 F.2d 1250, 1254 (D.C.Cir.1992).

The court found that there was insufficient evidence to prove by a preponderance of the evidence that Defendant violated § 856(a)(1). The court found that the government had met its burden of proof on the first two elements, but not the third element.

The court found that Defendant knowingly operated and maintained a place. Defendant clearly knowingly operated and maintained the House. Defendant owned the House and lived there. *United States v. Cabbell,* 35 F.3d 1255, 1262 (8th Cir. 1994) (affirming conviction for "conspiracy to violate 21 U.S.C. § 856,"[10] because "[t]he jury could have inferred that [the defendant] 'maintained the house because

he lived there.' "), *superseded by statute on other grounds,* USSG app. C., amend. 566, *as recognized in United States v. Carter,* 490 F.3d 641, 646 (8th Cir.2007); *see also United States v. Howell,* 31 F.3d 740, 741 (8th Cir.1994) (holding that there was sufficient evidence to support a defendant's conviction under § 856(a)(1), where the defendant had constructive possession and control of marijuana growing in a soybean field that his grandmother owned); *Verners,* 53 F.3d at 296 ("Where the defendant lives in the house, this element is normally easily proved.").

The court found that Defendant did not operate or maintain the House for the purpose of manufacturing, distributing or using controlled substances. At most, the small amount of marijuana, residue and paraphernalia in Defendant's bedroom is some evidence that Defendant was a casual marijuana user. The court found, however, that it was more likely that Defendant's husband, Robert Cole, was the casual marijuana user. Robert Cole also lived at the House and slept in Defendant's bedroom. Cole admitted to law enforcement officers that he was a marijuana user. To the extent that the evidence showed that Defendant knowingly permitted Robert Cole and other family members to use the House to manufacture, distribute or use marijuana, such circumstances state a claim under § 856(a)(2), not § 856(a)(1). *Verners,* 53 F.3d at 297 n. 4. "[M]erely maintaining the premises so that others may engage in [illegal drug activity] is not

---

**9.** It appears the circuit courts of appeal are split on the requisite level of intent necessary to support a conviction under § 856(a)(1). *Compare Verners,* 53 F.3d at 296 ("We think it is fair to say, at least in the residential context, that the manufacture (or distribution or use) of drugs must be at least one of the primary or principal uses to which the house is put."), *with United States v. Soto–Silva,* 129 F.3d 340, 346 n. 4 (5th Cir.1997) ("[Section] 856(a)(1) does not require that drug distribu-

tion be the *primary* purpose, but only a *significant purpose.*" (Emphasis in original.)).

**10.** It is unclear whether *Cabbell* involved a prosecution under § 856(a)(1) or § 856(a)(2). It appears more likely that *Cabbell* involved a prosecution under § 856(a)(1), because the district court used a jury instruction that is similar to Model Instruction No. 6.21.856A. *Compare Cabbell,* 35 F.3d at 1261 n. 4, *with* Model Instruction No. 6.21.856A.

a violation of [§ ] 856(a)(1)." *United States v. Soto–Silva,* 129 F.3d 340, 346 (5th Cir.1997).

Even if the government had proven that Defendant was a casual drug user based on the marijuana, residue and paraphernalia in her bedroom, the court held that Defendant did not possess a firearm in connection with a violation of § 856(a)(1). "The 'casual' drug user does not run afoul of [§ 856(a)(1) ] . . . ." *Lancaster,* 968 F.2d at 1254. The casual drug user "does not maintain [her] house for the purpose of using drugs but rather for the purpose of residence, the consumption of drugs therein being merely incidental to that purpose." *Id.* Stated differently, "an isolated instance of drug use or distribution or manufacture is not sufficient to constitute a violation of [§ 856(a)(1) ]." *Clavis,* 956 F.2d at 1090–91; *Verners,* 53 F.3d at 296. Here, the government did not prove that any casual drug use on the part of Defendant was anything more than incidental to her maintenance of the House. For example, this is not a case in which witnesses testified that they observed large amounts of drugs in the House or large numbers of persons buying controlled substances from Defendant. *Cf. Cabbell,* 35 F.3d at 1261–62 (finding that evidence was sufficient to support conviction under "21 U.S.C. § 856," where "three witnesses indicated that [the defendant] was in possession of or sold cocaine base from . . . [the places]" ); *United States v. Puckett,* 147 F.3d 765, 769 & 769 n. 4 (8th Cir.1998) (holding there was sufficient evidence to support a § 856(a)(1) conviction, where a witness testified that the defendant "directed her to rent ten different apartments for the purpose of selling or manufacturing crack"). There is also no evidence that Defendant occupied a supervisory, managerial or entrepreneurial role in a drug enterprise. *See Banks,* 987 F.2d at 466 ("[O]ne way to tell whether a defendant had the requisite mental purpose under

(a)(1) is to decide whether he acted as a supervisor, manager, or entrepreneur.").

Accordingly, the court held that Defendant did not possess a firearm in connection with her maintenance of a drug-involved premises, in violation of 21 U.S.C. § 856(a)(1). USSG § 2K2.1(b)(5).

### 3. 21 U.S.C. § 856(a)(2): Family members' purposes

There is also insufficient evidence in the record to prove by a preponderance of the evidence that Defendant violated § 856(a)(2). As applied to the government's theory of the case, the elements of § 856(a)(2) are: Defendant (1) managed or controlled the House (2) as its owner and (3) knowingly and intentionally made the House available to another for the purpose of unlawfully storing, distributing or using a controlled substance. *See Chen,* 913 F.2d at 187 (reciting elements of § 856(a)(2)); *accord* Model Instruction 6.21.856B. As indicated, § 856(a)(2) is "designed to apply to the person who may not have actually opened or maintained the place for the purpose of drug activity, but who has knowingly allowed others to engage in those activities by making the place 'available for use . . . for the purpose of unlawfully' engaging in such activity." *Chen,* 913 F.2d at 190. The defendant "need not have the express purpose . . . that drug related activity take place; rather such activity is engaged in by others (i.e., others have the purpose)." *Id.; see also United States v. Harrison,* 133 F.3d 1084, 1086 (8th Cir.1998) (approving of jury instruction for § 856(a)(2), which stated that "the government is not required to prove [the defendant] intended to use the building for the prohibited purpose").

The court assumed for the sake of argument that Defendant "managed" and "controlled" the House as one of its owners. The court further assumed for the sake of

argument that Defendant knowingly and intentionally made the House available to Robert Cole and Paul Gilbert.

The court found that the government did not prove by a preponderance of the evidence that Robert Cole or Paul Gilbert acted for the purpose of unlawfully storing, distributing or using a controlled substance. There was insufficient evidence to show that anyone living in the House used the House for anything more than casual drug use. Although the precise level of intent necessary to support a conviction under § 856(a)(2) is unclear,[11] Congress's use of the phrase "the" purpose (as opposed to, for example, "a" purpose) indicates that the purpose element of § 856(a)(2) requires of proof of something more than an incidental purpose that is commonly associated with casual drug users. *Cf. Lancaster,* 968 F.2d at 1254; Model Instruction 6.21.856B (requiring proof of a "significant" purpose). Like Defendant, Robert Cole and Paul Gilbert resided in the House and therefore had compelling reasons for using the House that are not related to illegal drug use.

Harrison, the only Eighth Circuit Court of Appeals case upholding a sufficiency-of-the-evidence challenge to a § 856(a)(2) conviction, presents far different facts. In *Harrison,* the defendant owned property in Des Moines. 133 F.3d at 1085. He lived on a trailer on the property that was next to a Quonset hut[12] that housed his business. *Id.* The defendant also rented part of the premises to a man and a woman. *Id.* At trial, the man testified that the man was manufacturing methamphetamine on the property with the defendant's equip-

ment. *Id.* He further testified that he witnessed the defendant present "on at least ten occasions" during the manufacture of methamphetamine on the defendant's property and with his equipment and observed the defendant and others sniffing methamphetamine on the premises. *Id.* The woman testified that she saw methamphetamine being manufactured in the Quonset hut while the defendant was present. *Id.*

Unlike *Harrison,* in the case at bar there is no showing that anyone used the House for anything more than casual drug use and merely incidental to their purposes of residence. In *Harrison,* the defendant knowingly permitted persons who clearly had at least a significant purpose of manufacturing methamphetamine to use his property.

Accordingly, the court held that Defendant did not possess a firearm in connection with her management or control of a drug-involved premises, in violation of 21 U.S.C. § 856(a)(2). USSG § 2K2.1(b)(5).

### 4. Conclusion

The court found that the government did not prove that Defendant possessed a firearm in connection with another felony offense and, therefore, a four-level enhancement was not appropriate. USSG § 2K2.1(b)(5).

### VI. DISPOSITION

After all applicable adjustments, the court found that Defendant's total offense level was **28**. The court also found that

---

11. Whereas the Model Instructions state that the purpose must be "a significant purpose for the location," Model Instruction 6.21.856B, *Tamez* broadly states: "[Section] 856(a)(2) requires only that proscribed activity was present, that Tamez knew of the activity and allowed that activity to continue." *Tamez,* 941 F.2d at 774.

12. "[A] Quonset hut is 'a prefabricated shelter set on a foundation of bolted steel trusses and built of a semicircular arching roof of corrugated metal insulated with wood fiber.'" *United States v. Scott,* 64 F.3d 377, 378 n. 2 (8th Cir.1995) (quoting Webster's Ninth New Collegiate Dictionary (1983)).

Defendant was a **Criminal History Category II.** Accordingly, the court found that Defendant's advisory Sentencing Guidelines range was 87 **to 108 months of imprisonment.** *See* USSG Sentencing Table. At the Hearing, the court sentenced Defendant in a manner consistent with the instant Sentencing Memorandum.

**IT IS SO ORDERED.**